TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00882-CV






Jacquelyn E. Davis, Mia D. Jackson, Seneada R. Davis, 


Shae R. Davis, and Emiko N. Davis, Appellants


v.



The Minnesota Life Insurance Company, Appellee






FROM THE COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY


NO. 238,264, HONORABLE J. DAVID PHILLIPS, JUDGE PRESIDING 







 Appellants Jacquelyn E. Davis, Mia D. Jackson, Seneada R. Davis, Shae R. Davis,
and Emiko N. Davis appeal the trial court's granting of summary judgment in favor of appellee
The Minnesota Life Insurance Company (Minnesota Life). (1) We will affirm.


Facts

 On October 2, 1985, Jacquelyn Davis and her husband, Jessie Davis, applied for
a joint mortgage life insurance policy through Minnesota Life. Jacquelyn was thirty-eight years
old and Jessie was forty-two. The application states, "I (We) hereby apply for decreasing term
insurance in connection with indebtedness due on the loan identified in this application. It is
understood that [Minnesota Life] shall incur no liability because of this application unless and until
it is approved by [Minnesota Life] and the first premium is paid while my health and other
conditions affecting the insurability of the applicant(s) are as described in this application." A
printed chart on the application indicates that the monthly premium for one insured in Jacquelyn's
age bracket was $4.42 and the premium for two insureds, one of whom was in Jessie's age
bracket, was $9.75; the rate schedule indicates that two insureds in the 30 - 34 age bracket would
pay $5.46 a month. A blank on the application titled "initial monthly premium" contains two
handwritten notations stating "5.46" and "9.75." Jessie did not answer two questions regarding
his health and hospitalizations or doctor consultations; Minnesota Life sent three letters requesting
the omitted information. A Minnesota Life employee made a handwritten note on the application
that Jessie's application was declined as incomplete and Jacquelyn's was approved for a single-insured policy. Jessie died on January 31, 1986. On February 18, 1986, Minnesota Life issued
a policy covering only Jacquelyn. The cover page for Jacquelyn's policy indicates her monthly
premium was $5.46. 

 Eleven years later, in July 1997, Jacquelyn's lawyer contacted Minnesota Life,
claiming she had been paying premiums for two insureds and therefore the mortgage should have
been paid under the policy when Jessie died. Minnesota Life responded that it had mistakenly
charged Jacquelyn $5.46 for single-insured coverage because in September 1985 it had raised its
rates. Because the Davises had filled out an application containing the old rate schedule, under
which single-insured premiums were $4.42, Minnesota Life acknowledged it should have charged
Jacquelyn the lower premium. Jacquelyn responded that although the higher premium may have
been charged in error, Minnesota Life was bound by the contract. Because she had paid a two-insureds premium under the old rate schedule, Jacquelyn demanded that Minnesota Life pay the
remaining mortgage balance and reimburse her for mortgage payments made since Jessie's death.

 When Minnesota Life declined to pay the remaining mortgage and past payments,
appellants filed suit, alleging causes of action under article 21.21 of the Texas Insurance Code and
the Texas Deceptive Trade Practices-Consumer Protection Act (the DTPA), and for breach of
contract, breach of fiduciary duty, common law fraud, negligent misrepresentation, negligence,
and gross negligence. See Tex. Ins. Code Ann. art. 21.21 (West 1981 & Supp. 2000); Tex. Bus.
& Com. Code Ann. §§ 17.41-.63 (West 1987 & Supp. 2000). Minnesota Life moved for
summary judgment on the following grounds: (1) Jessie died before the policy was issued and
therefore was never insured, thus defeating appellants' breach of contract, breach of fiduciary
duty, negligence, and gross negligence claims, all of which depended on the existence of an
insured/insurer relationship between Jessie and Minnesota Life; and (2) appellants' remaining
claims were time-barred because the suit was filed eleven years after the policy was issued and
the first premium was collected. The trial court granted summary judgment for Minnesota Life.


Minnesota Life's Summary Judgment Evidence

 Appellants contend in their first issue that Minnesota Life's motion for summary
judgment relied on improper evidence. We disagree.

 Minnesota Life's motion for summary judgment relied on Teresa Guindon's
affidavit. In her affidavit, Guindon states she is employed by Minnesota Life as a Senior
Compliance Specialist. In the course of her duties, Guindon investigated Jacquelyn's complaints
and gathered from Minnesota Life's records the information recited in and exhibits attached to the
affidavit. Guindon states she "know[s] the facts as stated [in her affidavit] to be true and correct." 
She states the exhibits are true and correct copies of documents from Minnesota Life's records
that were kept in the regular course of and maintained under Minnesota Life's regular business
practices. She states she has knowledge of Minnesota Life's practices regarding retention of
records. Guindon's affidavit goes on to recite the history of Jacquelyn's policy, including Jessie's
application and its denial as incomplete. Guindon explains that in September 1985, premiums for
individuals of Jacquelyn's age were increased from $4.42 to $5.46. Guindon states she discovered
during her review of the file that Minnesota Life had erroneously charged Jacquelyn the new,
higher single-insured rate, and therefore refunded Jacquelyn $201 for premium overpayments and
interest. Guindon attached Jacquelyn and Jessie's application, letters to Jessie seeking further
information, the insurance policy, and correspondence between Jacquelyn's lawyer and Guindon. 

 Appellants filed a motion objecting to Guindon's affidavit on the bases that (1)
Guindon did not state her affidavit was made on personal knowledge, (2) the affidavit contained
inadmissible hearsay in the form of the letters to Jessie seeking the omitted information and
denying his application as incomplete, and (3) Guindon improperly referred to and attached offers
of settlement and compromise. Appellants did not obtain the trial court's ruling on their
objections. Objected-to evidence remains part of the summary judgment record unless an order
sustaining the objections to the evidence appears in the record. See Cain v. Rust Indus. Cleaning
Servs., Inc., 969 S.W.2d 464, 466 (Tex. App.--Texarkana 1998, pet. denied); French v. Johnson
County, 929 S.W.2d 614, 616-17 (Tex. App.--Waco 1996, no writ); Eads v. American Bank,
N.A., 843 S.W.2d 208, 211 (Tex. App.--Waco 1992, no writ). Absent a ruling on appellants'
objection, we review the trial court's granting of summary judgment in light of all the summary
judgment evidence, including Guindon's affidavit and exhibits. See Cain, 969 S.W.2d at 466-67;
Eads, 843 S.W.2d at 211. (2) We overrule appellants' first issue on appeal.


Failure to Attack All Grounds for Summary Judgment

 Minnesota Life moved for summary judgment on two grounds: (1) appellants'
breach of contract, breach of fiduciary duty, negligence, and gross negligence claims failed
because Jessie died before the policy was issued and was therefore never an insured under the
policy; and (2) appellants' remaining claims of DTPA violations, Insurance Code violations,
fraud, and negligent misrepresentation were time-barred under statutes of limitations. The trial
court rendered judgment without stating its grounds. On appeal, appellants do not attack
Minnesota Life's first ground for summary judgment. We may not reverse a trial court's
judgment in the absence of properly assigned error. See San Jacinto River Auth. v. Duke, 783
S.W.2d 209, 210 (Tex. 1990); Orchid Software, Inc. v. Prentice-Hall, Inc., 804 S.W.2d 208, 211
(Tex. App.--Austin 1991, writ denied); Larrumbide v. Doctors Health Facilities, 734 S.W.2d 685,
687 (Tex. App.--Dallas 1987, writ denied). When a summary judgment rests on more than one
ground and the aggrieved party does not assign error as to each of the grounds, this Court will
affirm the judgment. See Texas Dep't of Human Resources v. Orr, 730 S.W.2d 435, 436 (Tex.
App.--Austin 1987, no writ). We affirm the trial court's granting of summary judgment on
appellants' breach of contract and fiduciary duty, negligence, and gross negligence claims.


Statutes of Limitations

 Appellants contend the trial court erred in granting summary judgment because the
discovery rule should apply to toll the statute of limitations. As noted above, we will examine
this argument only as far as it applies to the remaining DTPA, Insurance Code, fraud, and
negligent misrepresentation claims. 

 Generally, a fraud action must be brought within four years of the day the action
accrues. See Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a)(4) (West Supp. 2000). Actions for
violations of the Insurance Code, violations of the DTPA, or negligent misrepresentation must be
brought within two years of the day the cause of action accrues. See Tex. Ins. Code Ann. art.
21.21, § 16(d); Tex. Bus. & Com. Code Ann. § 17.565 (West 1987); Milestone Properties, Inc.
v. Federated Metals Corp., 867 S.W.2d 113, 118 (Tex. App.--Austin 1993, no writ). The
discovery rule is a very limited exception that tolls the running of limitations until the plaintiff
knows or should know, in the exercise of reasonable diligence, of the facts giving rise to the cause
of action. (3) See Computer Assocs. Int'l, Inc. v. Altai, Inc., 918 S.W.2d 453, 455 (Tex. 1996);
Heron Fin. Corp. v. United States Testing Co., 926 S.W.2d 329, 331 (Tex. App.--Austin 1996,
writ denied). The discovery rule tolls the applicable statute of limitations when (1) the nature of
the injury is inherently undiscoverable and (2) evidence of the injury is objectively verifiable. See
Altai, Inc., 918 S.W.2d at 456; Heron Fin. Corp., 926 S.W.2d at 332. In other words, the
discovery rule applies only when it is difficult for the plaintiff to learn of the wrongful act. See
Altai, Inc., 918 S.W.2d at 456; Willis v. Maverick, 760 S.W.2d 642, 645 (Tex. 1988). A
defendant seeking a limitations-based summary judgment must prove when the cause accrued and
negate the applicability of the discovery rule if raised by the plaintiff. See Burns v. Thomas, 786
S.W.2d 266, 267 (Tex. 1990); Heron Fin. Corp., 926 S.W.2d at 332. 

 Appellants argue Minnesota Life's alleged misdeeds were inherently undiscoverable
and thus the statute of limitations was tolled until Minnesota Life disclosed the overcharged
premiums in 1997. Appellants contend the overcharges were inherently undiscoverable because
Jacquelyn did not realize she had been paying the wrong premium until she requested and received
a copy of her policy and application in 1997. We disagree.

 The record contains no evidence that Minnesota Life was aware it was charging the
incorrect premium and sought to conceal that fact. The evidence indicates the mistake was not
discovered until Guindon reviewed the file in response to Jacquelyn's complaint. Once the
mistake came to light, Minnesota Life refunded the overpaid premiums promptly. The fact that
Minnesota Life charged Jacquelyn the wrong premium was not inherently undiscoverable. In fact,
it was easily discoverable. There is no evidence that Minnesota Life sought to keep Jacquelyn
from obtaining a copy of the policy. When she requested a copy of the policy in 1997, Minnesota
Life promptly sent it to her. The discovery rule tolls limitations until the injured party has
discovered or should have discovered, in the exercise of reasonable care and diligence, the nature
of the injury. See Heron Fin. Corp., 926 S.W.2d at 331. The erroneous premium was readily
apparent from a comparison of the rate Jacquelyn was supposed to pay, reflected in the rate
schedule on the application, and the rate she actually paid, reflected in the policy or billing
statements. This is exactly how Jacquelyn discovered the discrepancy in 1997. Jacquelyn could
have kept a copy of her insurance application for her records or noted what her premium should
have been and compared that to the premium she was actually paying. Jacquelyn could have
requested her policy and application at any time during the eleven years after the policy's
inception, in which case she would have discovered the discrepancy much earlier. Minnesota
Life's charging the wrong premium was not inherently undiscoverable; thus, appellants cannot
meet the first prong of the Altai test. See Altai, Inc., 918 S.W.2d at 456. Minnesota Life showed
the cause of action accrued in 1986, when Jacquelyn was first charged and paid the wrong
premium amount, and negated the applicability of the discovery rule. Thus, appellants' claims
are time-barred. The trial court properly granted summary judgment in Minnesota Life's favor. 
We overrule appellants' second issue on appeal.

 Having overruled appellants' issues on appeal, we affirm the trial court's summary
judgment for Minnesota Life.



 
 

 Jan P. Patterson, Justice

Before Justices Jones, Yeakel and Patterson

Affirmed

Filed: June 22, 2000

Do Not Publish
1. The Minnesota Life Insurance Company was formerly known as Minnesota Mutual Life
Insurance Company.
2. Further, appellants attached to their response to Minnesota Life's motion for summary
judgment Jacquelyn's affidavit in which she recites most of the same facts as does Guindon. 
Jacquelyn states she and her husband applied for two-insured mortgage life insurance in October
1985, Jessie was denied coverage and subsequently died before a single-insured policy was issued
to Jacquelyn in February 1986, and Minnesota Life wrongly charged her $5.46 instead of $4.42
a month. Jacquelyn adds that she did not have a copy of her policy until she requested one in
February 1997. She states that upon receiving her policy, she realized she had been overcharged
since 1986. Appellants attached as exhibits the insurance application, insurance policy, and two
of the letters between Guindon and Jacquelyn's attorney (the settlement and compromise offers
to which appellants objected in Guindon's affidavit). Appellants also attached excerpts from
Minnesota Life's answers to appellants' discovery requests. The evidence appellants produced
establishes the same facts as the evidence to which they objected in Minnesota Life's motion with
the exception of Guindon's statements that Minnesota Life sent letters to Jessie seeking
information which went unanswered. By producing the same evidence to which they objected,
appellants waived any error in the admission of Guindon's affidavit and exhibits. See Richardson
v. Green, 677 S.W.2d 497, 501 (Tex. 1984); Owens-Corning Fiberglass Corp. v. Wasiak, 917
S.W.2d 883, 894 (Tex. App.--Austin 1996), aff'd, 972 S.W.2d 35 (Tex. 1998); Shenandoah
Assocs. v. J & K Properties, Inc., 741 S.W.2d 470, 478 (Tex. App.--Dallas 1987, writ denied). 
3. The discovery rule may be applied to Insurance Code, DTPA, and fraud causes of action. 
See Tex. Ins. Code Ann. art. 21.21, § 16(d); Tex. Bus. & Com. Code Ann. § 17.565; Murphy
v. Campbell, 964 S.W.2d 265, 270 (Tex. 1997). It is not clear that the discovery rule may be
applied to negligent misrepresentation causes of action. Compare Hendricks v. Thornton, 973
S.W.2d 348, 365 (Tex. App.--Beaumont 1998, pet. denied), with Kansa Reinsurance Co. v.
Congressional Mortgage Corp., 20 F.3d 1362, 1372-73 (5th Cir. 1994).



ery rule tolls limitations until the injured party has
discovered or should have discovered, in the exercise of reasonable care and diligence, the nature
of the injury. See Heron Fin. Corp., 926 S.W.2d at 331. The erroneous premium was readily
apparent from a comparison of the rate Jacquelyn was supposed to pay, reflected in the rate
schedule on the application, and the rate she actually paid, reflected in the policy or billing
statements. This is exactly how Jacquelyn disco