Johnnie WASHINGTON, Appellant,

v.

Doris McMILLAN, Appellee.

No. 04–94–00236–CV.

Court of Appeals of Texas,
San Antonio.

April 12, 1995.

Rehearing Denied April 27, 1995.

Charles A. Nicholson, Law Offices of Pat Maloney, P.C., San Antonio, for appellant.

Terrence J. Martin and Edward T. Hecker, Martin & Strolle, P.C., San Antonio, for appellee.

Before LÓPEZ, STONE and DUNCAN, JJ.

## OPINION

DUNCAN, Justice.

This appeal arises out of a judgment in favor of the defendant, Doris McMillan, and against the plaintiff, Johnnie Washington, following Washington's failure to respond to McMillan's motion for summary judgment. Washington brings forth a single point of error challenging the trial court's denial of her motion for new trial, which was grounded upon the factors set forth in *Craddock v. Sunshine Bus Lines*, 134 Tex. 388, 133 S.W.2d 124 (1939). We hold that *Craddock* applies in the summary judgment context and, further, that Washington has met the *Craddock* standard in this case. We therefore reverse the judgment below and remand the case to the trial court for further proceedings consistent with this opinion.

## FACTS

Doris McMillan is a diabetic who treats his diabetes with a prescription drug called Dymelor. At the time the Dymelor was prescribed, McMillan was instructed by his doctor to eat within 15–30 minutes after taking the drug. This instruction was also on the medication's label.

On the morning of the accident, McMillan took his Dymelor but did not eat within 15–30 minutes thereafter, as he had been instructed. Instead McMillan had his friend, Johnnie Washington, take him to a routine eye exam. McMillan planned to eat breakfast with Washington after the exam. Subsequently, when McMillan was driving to breakfast, he blacked out. The car ran off the road and collided with several mailboxes. As a result of the accident, Washington allegedly suffered severe personal injuries.

Washington sued McMillan for negligence in failing to keep a proper lookout and failing

to properly brake, turn, and control the car. Washington also alleged that, upon regaining consciousness, McMillan told her that he had lost consciousness as a result of his failure to eat within 15–30 minutes of taking the Dymelor. McMillan answered and later moved for summary judgment. McMillan's motion was grounded upon his having exercised ordinary care. In support of his motion, McMillan proffered his own affidavit, as well as that of his treating doctor. Taken together, the two affidavits established that McMillan "had no way of knowing that he was going to pass out nor was there any reason to suspect that he would." McMillan's doctor's affidavit also established that McMillan's failure to eat within 15–30 minutes of taking the Dymelor did not, in reasonable medical probability, cause McMillan to black out suddenly and without warning.

McMillan's motion was served on Washington's attorney in compliance with Rule 21a, TEX.R.CIV.P. It did not, however, ever reach the desk of either Washington's attorney or his secretary; instead, it was misrouted and sent directly to the file room. Washington's attorney therefore failed to respond to the motion and failed to appear at the summary judgment hearing. Nonetheless, McMillan's counsel and the trial court proceeded with the hearing.[1] In the absence of controverting proof, the trial court granted McMillan's motion and signed a judgment in his favor.

Washington's attorney first learned of the motion for summary judgment when he received a copy of the judgment from McMillan's attorney. Shortly thereafter, Washington filed a motion for new trial grounded upon the factors set forth in *Craddock*.[2] The allegations regarding the misrouting of the motion were supported by the affidavits of Washington's attorney and his secretary. Washington also supported her motion with her own affidavit, in which she stated that McMillan told her that, *"based on his visit with his doctor,"* he had blacked out because he failed to eat after taking his Dymelor. The trial court denied the motion for new trial, and Washington filed this appeal.

## STANDARD OF REVIEW

Washington first urges that, because neither the parties nor the trial court questioned the applicability of *Craddock* in the summary judgment context, we should not pass on this issue. We disagree. Whether *Craddock* applies is inextricably intertwined with determining the appropriate standard of review in this case.

As a general rule, the denial of a motion for new trial that does not contain one of the complaints enumerated in Rule 324(b), TEX.R.CIV.P., is reviewed under an abuse of discretion standard. *Champion Int'l Corp. v. Twelfth Court of Appeals,* 762 S.W.2d 898, 899 (Tex.1988, orig. proceeding); *see* W. Wendell Hall, *Revisiting Standards of Review in Civil Appeals,* 24 ST. MARY's L.J. 1041, 1118–19 (1993) (standard of review depends upon complaint preserved in motion for new trial). An abuse of discretion will be found only when the trial court's action is arbitrary, unreasonable, or without reference to guiding rules and principles. *Downer v. Aquamarine Operators,* 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). Application of the abuse of discretion standard thus requires, in the first instance, a determination of the "guiding rules and principles." *See* Hall, 24 ST. MARY's L.J. at 1052.

---

1. The record before us does not indicate that an attempt was made to contact Washington's counsel prior to the hearing. In the event an attempt was not made, we remind McMillan's counsel that Rule 11 of The Texas Lawyer's Creed provides that a Texas attorney "will not take advantage, by causing any default or dismissal to be rendered, when [he or she] know[s] the identity of an opposing counsel, without first inquiring about that counsel's intention to proceed." We also take this opportunity to remind trial judges that they are authorized to enforce Rule 11 through their "inherent powers and rules already in existence."

2. In *Craddock,* the Commission of Appeals held that the trial court should set aside a post-answer default "in any case in which the failure of the defendant to answer before judgment was not intentional, or the result of conscious indifference on his part, but was due to a mistake or an accident; provided the motion for a new trial sets up a meritorious defense and is filed at a time when the granting thereof will occasion no delay or otherwise work an injustice on the plaintiff." *Craddock,* 133 S.W.2d at 126.

■ If *Craddock* applies in the summary judgment context, the "guiding rules and principles" are well-settled: The trial court abuses its discretion in denying a motion for new trial if the non-movant establishes: (1) "the failure of the defendant to answer before judgment was not intentional, or the result of conscious indifference on his part, but was due to a mistake or an accident"; (2) "the motion for a new trial sets up a meritorious defense";[3] and (3) the motion "is filed at a time when the granting thereof will occasion no delay or otherwise work an injustice to the plaintiff." *Craddock*, 133 S.W.2d at 126. Accordingly, a proper application of the abuse of discretion standard requires that we first determine whether *Craddock* applies in the summary judgment context. *See Krchnak v. Fulton*, 759 S.W.2d 524, 528–29 (Tex.App.—Amarillo 1988, writ denied); *Costello v. Johnson*, 680 S.W.2d 529, 531 (Tex.App.—Dallas 1984, writ ref'd n.r.e.).

■ Of the four Texas Courts of Appeals that have considered this issue, only one has held that *Craddock* does not apply. *Rabe v. Guaranty Nat'l Ins. Co.*, 787 S.W.2d 575, 579 (Tex.App.—Houston [1st Dist.] 1990, writ denied); *Enernational Corp. v. Exploitation Engr's*, 705 S.W.2d 749, 751 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.) (both refusing to apply *Craddock*); *contra Gonzalez v. Surplus Ins. Services*, 863 S.W.2d 96, 102 (Tex.App.—Beaumont 1993); *Krchnak*, 759 S.W.2d at 528–29; *Costello*, 680 S.W.2d at 531 (all applying *Craddock*).

In reaching this conclusion, the First Court of Appeals reasoned that a summary judgment is granted not because of the non-movant's failure to answer, as is the case in the post-answer default judgment context, but because the motion for summary judgment and supporting proof establishes the movant's right to judgment as a matter of law. *Enernational*, 705 S.W.2d at 751.

■ We recognize that the failure to respond to a motion for summary judgment cannot lead to an adverse judgment if the motion, together with the supporting proof, is insufficient to establish the movant's right to judgment as a matter of law. *See* TIMOTHY PATTON, SUMMARY JUDGMENTS IN TEXAS § 4.01 (Butterworth 1992); *see also City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979) (trial court may not grant summary judgment by default when movant's summary judgment proof is "legally insufficient"). But when the motion is legally sufficient, the non-movant must bring forward sufficient controverting proof to raise a material fact issue to avoid a summary judgment. Patton at § 5.05[2]; *see also Clear Creek Basin Auth.*, 589 S.W.2d at 678 (non-movant must present summary judgment proof "when necessary to establish a fact issue."). In the present situation, therefore, the failure to answer may lead to an adverse judgment, just as it did in *Craddock*. As one commentator has noted, the *Enernational* "rationale ... begs the question. In the absence of an opportunity to file a response, the non-movant ... loses his right to raise a fact issue by filing his own proof." Patton at § 7.04.

This case, we believe, demonstrates the fallacy in the *Enernational* reasoning. Both McMillan's affidavit, as well as that of his doctor, established that McMillan had no reason to believe, and did not believe, that his failure to eat within 15–30 minutes of ingesting Dymelor might cause him to black out. Moreover, the affidavit of McMillan's doctor established that McMillan's failure to eat was not, in reasonable medical probability, a proximate cause of McMillan's blacking out. McMillan's earlier statement to the contrary was explained away as an "incorrect" "assumption."

Both affidavits were "clear, positive and direct, otherwise credible ... and could have been readily controverted," TEX.R.CIV.P. 166a(c), by lay or expert testimony or medical records. Accordingly, in the absence of controverting proof, McMillan's motion and supporting proof conclusively and as a matter of law established that McMillan's blacking out—and, therefore, the cause of accident—

---

3. We recognize that a litigant who does not receive notice of a trial setting is not required to set up a meritorious defense. *Peralta v. Heights Medical Center*, 485 U.S. 80, 108 S.Ct. 896, 99 L.Ed.2d 75 (1988). In this case, however, it is undisputed that Washington's attorney was served with the summary judgment motion and the notice of hearing.

were not caused by any failure on McMillan's part to exercise ordinary care. McMillan's motion and supporting proof thus established McMillan's right to judgment as a matter of law.

However, when the affidavits of McMillan and his doctor are considered in the light of Washington's testimony that McMillan told her *"based on his visit with his doctor"* that he had blacked out because he failed to eat after taking his Dymelor, a question is raised as to the credibility of both McMillan and his doctor—a quintessential issue of fact for the factfinder and an insurmountable obstacle to summary judgment. *See Casso v. Brand*, 776 S.W.2d 551, 558 (Tex.1989) (summary judgment inappropriate when credibility is likely to be dispositive factor). This credibility question is particularly acute in light of the potential liability of McMillan's doctor to Washington if he should have warned McMillan, but failed to do so. *See Gooden v. Tips*, 651 S.W.2d 364 (Tex.App.—Tyler 1983, no writ), *cited in Bird v. W.C.W.*, 868 S.W.2d 767, 770 (Tex.1994). This case thus demonstrates that it may be the default in failing to respond that causes a summary judgment to be rendered. We therefore agree with the Amarillo Court of Appeals that the summary judgment context is in fact closely analogous to the default judgment context in *Craddock*. *Krchnak*, 759 S.W.2d at 528–29.

We further agree with the Amarillo Court of Appeals that "basic fairness" also militates in favor of applying the *Craddock* standard in the summary judgment context. *Id.* Again, the facts of this case forcefully demonstrate the fairness considerations. Who in good conscience can say that Washington, who is not at all to blame for failing to respond to McMillan's motion, should be made to bear the ultimate penalty—an adverse judgment—for an inadvertent error by her attorney's office staff? We are not willing to do so. Nor are we willing to stand by and watch a one-car collision negligence case explode into litigation about litigation with all its attendant complexities and costs.

We therefore join the majority of our sister courts that have addressed the issue and hold that *Craddock* applies in the summary judgment context. *See Gonzales*, 863 S.W.2d

at 102; *Krchnak*, 759 S.W.2d at 528–29; *Costello*, 680 S.W.2d at 531.

## MERITORIOUS DEFENSE

In this case, the parties agree that Washington has met the first and third elements of *Craddock*—Washington's failure to answer was not intentional or the result of conscious indifference, but was due to an accident or mistake, and Washington offered in her motion for new trial to pay McMillan's costs in obtaining the summary judgment. The only disputed element is whether Washington "set up a meritorious defense."

■ In the no-answer default situation, to "set up a meritorious defense" means to allege facts that, if true, would constitute a defense and to support those facts with competent summary judgment proof. *Ivy v. Carrell*, 407 S.W.2d 212, 214 (Tex.1966). In the summary judgment context, however, "to set up a meritorious defense" means to allege facts and bring forth summary judgment proof sufficient to raise a material issue of fact. *Krchnak*, 759 S.W.2d at 530. That is the issue before us—does Washington's affidavit raise a material issue of fact as to whether McMillan exercised reasonable care under the circumstances? In this respect, we adhere to the well-established standard of review in summary judgment cases. *See Nixon v. Mr. Property Mgt. Co. Inc.*, 690 S.W.2d 546, 548–49 (Tex.1985).

■ Washington first argues that McMillan's motion was insufficient because it addressed only whether McMillan's failure to eat within 15–30 minutes of ingesting Dymelor caused him to black out and fails to address Washington's allegations of failing to keep a proper lookout, failing to timely apply the brakes, and failing to properly turn and control the vehicle. We disagree. As McMillan correctly argues, it is undisputed that McMillan was unconscious when the alleged negligent acts and omissions took place. Accordingly, the issue was whether McMillan was negligent in driving when he had not eaten within 15–30 minutes of taking his Dymelor. McMillan's motion therefore sought to affirmatively and conclusively demonstrate that he was not negligent, because

he did not know, and had no reason to know, that he might black out. *See Harvey v. Culpepper,* 801 S.W.2d 596, 598 (Tex.App.—Corpus Christi 1990) (discussing defense of unforeseeable incapacity). In the absence of controverting proof, McMillan succeeded in carrying his burden and was entitled to summary judgment.

Washington next argues that her affidavit raised a material issue of fact as to what caused McMillan to black out. Before considering this argument, however, we must address McMillan's objection to Washington's affidavit as inadmissible hearsay within hearsay. We agree that the objection was timely raised; however, the record before us does not reveal that the trial court ruled on the objection in writing or otherwise.[4] Under these circumstances, the objection was waived. *Eads v. American Bank,* 843 S.W.2d 208, 211 (Tex.App.—Waco 1992, no writ); *Williams v. Conroe I.S.D.,* 809 S.W.2d 954, 957 (Tex.App.—Beaumont 1991, no writ); *Guzman v. Solis,* 748 S.W.2d 108, 111 (Tex.App.—San Antonio 1988, writ denied); *Utilities Pipeline Co. v. American Petrofina Marketing,* 760 S.W.2d 719, 723 (Tex.App.—Dallas 1988, no writ); *see generally* Tex. R.App.P. 52(a).[5] We therefore may consider Washington's affidavit in determining whether she raised a material issue of fact.

As mentioned above, Washington states in her affidavit that the day after the accident "McMillan went to his doctor to find out why he had lost conscious [sic]. Mr. McMillan informed me that, based upon his visit with his doctor, he had blacked out because of his failure to eat within 15–20 minutes of taking his diabetes medicine." This testimony impliedly contradicts that of McMillan's doctor that McMillan's failure to eat within 15–30 minutes after ingesting Dymelor did not, in reasonable medical probability, cause McMillan to black out suddenly and without warning, as McMillan alleges he did in this case.

Washington's affidavit also directly contradicts McMillan's testimony that his earlier statement to the contrary was an "assumption," which he learned from his doctor was "incorrect." Washington's affidavit is thus sufficient to call into question the credibility of both McMillan and his doctor and raise a material issue of fact as to whether McMillan knew or should have known that he might black out if he did not eat within 15–30 minutes of taking the Dymelor and, therefore, as to whether McMillan exercised ordinary care under the circumstances. In other words, Washington's motion for new trial and supporting proof raised a material issue of fact and thus set up a meritorious defense to the motion for summary judgment.

We therefore hold Washington met the *Craddock* test, and the trial court abused its discretion in denying her motion for new trial. Accordingly, we reverse the judgment below and remand the case to the trial court for further proceedings consistent with this opinion.

---

4. We note that a summary judgment motion is to be decided on the written record. *See Clear Creek Basin Auth.,* 589 S.W.2d at 677. If rulings on objections are not reduced to written form, there can be no written record to review.

5. The objection also falls of its own weight. Hearsay within hearsay is admissible "if each part of the combined statements conforms with

an exception to the hearsay rule...." Tex.R.Civ. Evid. 805. In this instance, the fact that Washington's testimony is contained in an affidavit is expressly contemplated by Rule 166a(f), Tex. R.Civ.P. And, as Washington correctly points out, the alleged statement by McMillan to Washington was an admissible statement against interest under Rule 803(24), Tex.R.Civ.Evid. Nor is the statement itself double hearsay. Washington testified only as to what McMillan told her.