# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00500-CV

**Limestone Construction, Inc., Appellant**

**v.**

**Summit Commercial Industrial Properties, Inc., Appellee**

## FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT NO. 03-368-C368, HONORABLE BURT CARNES, JUDGE PRESIDING

## O P I N I O N

Limestone Construction, Inc. (Limestone) appeals from the district court's overruling, by operation of law, Limestone's motion for new trial challenging a default no-evidence summary judgment. Limestone claims that the affidavit it filed with its new trial motion, which averred that Limestone did not receive prior notice of the summary judgment motion or hearing, conclusively entitles it to relief. Appellee Summit Commercial Industrial Properties, Inc. (Summit) contends that Limestone, in effect, waived its right to relief by failing to comply with the Williamson County local rules for obtaining a hearing on its motion. Because we hold that Limestone's affidavit established its entitlement to a new trial on the record before us, we must reverse the trial court and remand for a new trial.

## BACKGROUND

The underlying dispute arises from a real estate transaction, the details of which are unnecessary to address the issues before us. To summarize, Limestone filed suit against several defendants, including Summit, for common law fraud, statutory fraud, and negligent misrepresentation arising from Limestone's attempt to purchase development property that later proved to be subject to federal endangered species restrictions.

On March 27, 2003, Summit filed a no-evidence motion for summary judgment and obtained a hearing for April 21. *See* Tex. R. Civ. P. 166a(i). The motion contained a certificate of service prepared by Summit's attorney that complied with Texas Rule of Civil Procedure 21a. The certificate stated that "on March 27, 2003, a true and correct copy of the foregoing No Evidence Motion for Summary Judgment has been forwarded via certified mail, return receipt requested" to Limestone's attorney at "7475 Skillman, # 101-A, Dallas, Texas." It also referenced certified mail certificate number 7002 2030 0000 8852 4469 as having been posted to Limestone's attorney. Written in bold, capital letters just below the certificate of service was the following: "**A HEARING HAS BEEN SCHEDULED FOR APRIL 21, 2003, AT 9:00 A.M., ON THE NO EVIDENCE MOTION FOR SUMMARY JUDGMENT, IN THE ABOVE REFERENCED MATTER**."

Limestone did not file a response to the summary judgment motion. The summary judgment hearing was held on April 21 as scheduled, but Limestone's attorney did not attend. The trial court granted summary judgment in an order reflecting that "Plaintiff failed to appear or respond." Limestone's attorney later claimed that he learned of the summary judgment motion and

2

hearing for the first time "mid-morning" on April 21, when he received a call from Summit's attorney's office inquiring whether he had intended to attend the hearing.

Upon obtaining summary judgment, Summit filed a motion to sever Limestone's claims against it so as to make the order final and appealable. Summit set its severance motion for hearing on May 22. Limestone does not dispute that it had notice of the severance motion and hearing, but neither filed a response nor appeared at the hearing. On May 22, the trial court granted the severance.

On June 23, the last day on which it could do so,[1] Limestone filed a motion for new trial. The motion, supported by the affidavit of Limestone's attorney, relied solely on the ground that Limestone had not received notice of the summary judgment motion or hearing until after the hearing. Limestone's attorney further testified that he had received no notice of any attempted failed delivery of certified mail regarding the summary judgment proceedings until Summit's attorney advised him of same by letter of April 21, 2003. Thereafter, Limestone's attorney went to the post office "and they had no undelivered mail addressed to me, being held for me, nor did they know of any which had been held for me." He acknowledged that he shared his office with another attorney and a secretary who were authorized to sign for his mail, and "routinely" would do so. But he added, "To my knowledge, no mail has ever been refused by failure of the other attorney or his secretary to sign for mail addressed to me."

---

[1] Tex. R. Civ. P. 329b(a). The thirtieth day after the May 22 severance order was a Saturday, June 21. *Id.* R. 4.

3

Limestone's letter transmitting its new trial motion to the Williamson County District Clerk purported to request a hearing "on or before July 25, 2003."[2]  The Williamson County local rules require that all settings for non-jury matters be obtained through the office of court coordinator for each of the county's district courts.  Williamson County (Tex.) Dist. Ct. Loc. R. III, B.1.  There is no evidence that Limestone complied with these procedures or otherwise made further attempts to obtain a hearing.

On September 5, the seventy-fourth day after the summary judgment became final and appealable, Summit filed an affidavit from its attorney in opposition to Limestone's new trial motion.  Summit's attorney averred that on March 27, 2003, he sent to Limestone's attorney's office, by certified mail, return receipt requested, reference number 7002 2030 0000 8852 4469, a copy of Summit's no-evidence summary judgment motion and notice of hearing.  Attached to the affidavit was a copy of the front side of the transmittal envelope, which had been returned to Summit's attorney's office on May 28, 2003.  The envelope had a postal service stamp mark indicating an attempted delivery on March 28 and three stamps stating "Returned to Sender–Unclaimed."

Also attached to the affidavit was a computer printout dated April 21, 2003, signed and stamped by a postal employee on the same date, indicating that the envelope had been mailed on March 27, 2003, from ZIP code 78626 in Georgetown to ZIP code 75231 in Dallas, and that notice had been left at the Dallas ZIP code on March 28.  Although the 75231 Dallas ZIP code

---

[2]  The letter went on to explain that Limestone's counsel would be out of state between July 27 and August 13 on family vacation and attending continuing legal education programs.

corresponded to that of Limestone's attorney, the report did not state a specific address at which the notice had been left.[3]

No hearing on Limestone's new trial motion was ever set or held and, on September 6, 2003, the seventy-fifth day after the summary judgment became appealable, Limestone's motion for new trial was overruled by operation of law. *See* Tex. R. Civ. P. 329b(c). This appeal ensued.

## DISCUSSION

Limestone brings a single issue complaining that the trial court abused its discretion in failing to grant its motion for new trial.

**Standard of review**

Trial courts have broad discretion in ruling on motions for new trial. We review the denial of a motion for new trial for an abuse of discretion. *Cliff v. Huggins*, 724 S.W.2d 778, 778-79 (Tex. 1987); *Smith v. Holmes*, 53 S.W.3d 815, 817 (Tex. App.—Austin 2001, no pet). When a motion for new trial is overruled by operation of law, as here, the question becomes whether the trial court abused its discretion in allowing the motion to be overruled. *Bank One of Tex., N.A. v. Moody*, 830 S.W.2d 81, 85 (Tex. 1992).

A trial court abuses its discretion when it fails to correctly analyze or apply the law. *In re Dupont De Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004); *Comanche Nation v. Fox*, 128 S.W.3d 745, 749 (Tex. App.—Austin 2004, no pet.). In matters committed to a trial court's

---

[3] Limestone did not object to the admissibility of this document.

5

discretion, the test is whether the trial court acted arbitrarily or without reference to guiding legal principles. *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004).

**Standards governing new trial motions challenging default summary judgments**

Limestone assumes that the trial court's disposition of its new trial motion is controlled by the equitable standard that the Texas Supreme Court established in *Craddock v. Sunshine Bus Lines, Inc.*,[4] to review motions for new trial challenging no-answer default judgments and post-answer default judgments where a party fails to appear at trial on the merits. *See also Ivy v. Carrell*, 407 S.W.2d 212, 214 (Tex. 1966) (extending *Craddock* equitable principles to post-answer default judgments where party fails to appear at trial on the merits). Under *Craddock* and its progeny, a default judgment should be set aside when the party against whom the judgment is taken establishes that (1) the failure to answer (or appear) was not intentional or the result of conscience indifference, but the result of an accident or mistake; (2) the motion for new trial sets up a meritorious defense; and (3) granting the motion will occasion no undue delay or otherwise injure the party taking the default judgment. *Smith v. Babcock & Wilcox Constr. Co.*, 913 S.W.2d 467, 468 (Tex. 1995); *Craddock*, 133 S.W.2d at 126.

It is unclear, however, whether the *Craddock* equitable standard applies in the default summary judgment context. Some of our sister courts of appeals have applied a variant of the *Craddock* standard in the default summary judgment context: (1) the failure to answer must not have been intentional or the result of conscience indifference, but the result of an accident or mistake; and

---

[4] 133 S.W.2d 124 (Tex. 1939).

the nonmovant's motion for new trial must (2) allege facts and contain proof sufficient to raise a material question of fact; and (3) demonstrate that the granting thereof will occasion no delay or otherwise work an injury to the movant.[5] But this Court has never applied *Craddock* in the default summary judgment context, and the Texas Supreme Court more recently held that a different, "good cause" standard applies, at least in cases where a summary judgment nonmovant fails to timely respond, but learns of its failure prior to the summary judgment hearing and has an opportunity to seek a remedy under the rules of civil procedure, such as a continuance or leave to file a late response. *Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 685-86 (Tex. 2002).[6]

---

[5] *See*, *e.g.*, *Huffine v. Tomball Hosp. Auth.*, 979 S.W.2d 795, 799 (Tex. App.—Houston [14th Dist.] 1998, no pet.); *Medina v. Western Waste Indus.*, 959 S.W.2d 328, 330 (Tex. App.—Houston [14th Dist.] 1997, pet. denied); *Washington v. McMillan*, 898 S.W.2d 392, 396 (Tex. App.—San Antonio 1995, no writ); *Gonzales v. Surplus Ins. Servs.*, 863 S.W.2d 96, 102 (Tex. App.—Beaumont 1993, writ denied); *Krchnak v. Fulton*, 759 S.W.2d 524, 528-29 (Tex. App.—Amarillo 1988, writ denied); *Costello v. Johnson*, 680 S.W.2d 529, 531 (Tex. App.—Dallas 1984, writ ref'd n.r.e.).

[6] The supreme court reasoned:

> Our purpose in adopting the *Craddock* standard was to alleviate unduly harsh and unjust results at a point in time when the defaulting party has no other remedy available. *See Craddock*, 133 S.W.2d at 126. But when our rules provide the defaulting party a remedy, *Craddock* does not apply. Thus, we hold that *Craddock* does not apply to a motion for new trial filed after judgment has been granted on a summary-judgment motion to which the nonmovant failed to timely respond when the movant had an opportunity to seek a continuance or obtain permission to file a late response. Here, the facts necessary to establish good cause were available from Cimarron's own counsel and his employees two days before the summary-judgment hearing. The facts were all ascertainable without resort to any time-consuming formal discovery processes. Because Cimarron had an opportunity to seek a continuance or leave to file a late response, the court of appeals erred in applying *Craddock*.

*Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 686 (Tex. 2002).

7

The *Cimarron* "good cause" standard is similar to the first and third elements of the *Craddock* standard. It requires the nonmovant to show: (1) the failure to respond was not intentional or the result of conscious indifference, but the result of accident or mistake; and (2) allowing the late response will occasion no undue delay or otherwise injure the party seeking summary judgment. *Id.* at 688.[7] The supreme court expressly reserved the question of whether *Craddock* or its new "good cause" standard would apply where a party did not learn of its failure to respond prior to the summary judgment motion or hearing. *Id.* at 686.[8]

A related unresolved issue in our Court is how we would apply *Craddock* or *Cimarron* when a summary judgment nonmovant establishes they did not receive the motion. In the

---

[7] Although the supreme court discussed this standard in the context of reviewing the trial court's denial of leave for the nonmovant to file a late summary judgment response, it applied the same standard to the nonmovant's motion for new trial. *Id.* at 688.

[8] In a lone concurrence, Justice Hecht went further to suggest that "[t]he reason the *Craddock* standards should not apply is that the failure to timely answer a petition and the failure to timely respond to a motion for summary judgment are very different situations." 98 S.W.3d at 689 (Hecht, J., concurring).

To date, both the Corpus Christi and El Paso Courts of Appeals, in memorandum opinions, have suggested that *Craddock* applies where a summary judgment nonmovant does not receive notice of the motion or hearing prior to the hearing. *Cantu v. Valley Baptist Med. Ctr.*, No. 13-02-321-CV, 2003 Tex. App. LEXIS 7379, at *3 n.2 (Tex. App.—Corpus Christi Aug. 28, 2003, no. pet.) (memorandum opinion) (applying *Craddock* in lieu of *Cimarron* where "appellant contends she never received notice, and only found out about the summary judgment hearing after the default summary judgment was entered"); *Olien v. University of Tex. of the Permian Basin*, No. 08–02-00300-CV, 2003 Tex. App. LEXIS 1549, at *4 (Tex. App.—El Paso Feb. 20, 2003, no pet.) (memorandum opinion) (the situation in *Cimarron* "is not the case here": nonmovant did not become aware of the hearing until after the trial court had already granted summary judgment). On the other hand, while ultimately deciding the case on other grounds, the Beaumont Court of Appeals observed that *Cimarron* "called into serious question" whether *Craddock* would apply where a summary judgment nonmovant did not discover his error until after the hearing. *Stanley v. CitiFinancial Mort. Co.*, 121 S.W.3d 811, 815-16 (Tex. App.—Beaumont 2003, pet. filed).

8

context of non-summary judgment no-answer or post-answer default judgments, our court has regarded lack of notice, if established, as a substitute for the first *Craddock* element. *Smith*, 53 S.W.3d at 817. Once a party establishes such lack of notice, moreover, due process requires that it prevail without need to prove the other *Craddock* elements. *Id.*; *see also Lopez v. Lopez*, 757 S.W.2d 721, 722 (Tex. 1988) (citing *Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80 (1988)). Some of our sister courts have applied these principles to the default summary judgment context, both before and after *Cimarron*. *Rabie v. Sonitrol of Houston, Inc.*, 982 S.W.2d 194, 197-98 (Tex. App.—Houston [1st Dist.] 1998, no pet.); *see also Cantu v. Valley Baptist Med. Ctr.*, No. 13-02-321-CV, 2003 Tex. App. LEXIS 7379, at *3 (Tex. App.—Corpus Christi Aug. 28, 2003, no. pet.) (memorandum opinion).[9]

We believe these due process principles would logically extend at least to the "no evidence" summary judgment context, where the viability of the nonmovant's claims or defenses that are targeted by the summary judgment motion rest entirely (barring some form of self-inflicted procedural defect of the movant) upon the nonmovant's ability to respond and raise a fact issue. Tex. R. Civ. P. 166a(i) ("The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact."). We also believe this to be true regardless of which test, *Craddock* or *Cimarron*, would otherwise govern. The first element of each

---

[9] We also note that the pre-*Cimarron* cases cited in note 5, *supra*, each applied the full *Craddock* test in situations where the nonmovant had received notice but nonetheless failed to respond or appear in opposition to the summary judgment motion.

9

test is similar.[10]  If due process concerns require that the absence of notice issue supplants the first element of the *Craddock* test and obviates the need to prove other elements, we see no basis for treating the *Cimarron* test any differently.  Accordingly, we need not address whether *Craddock* or *Cimarron* governs, but only whether Limestone established that it did not receive notice of Summit's summary judgment motion and hearing.

**Application**

Limestone's motion for new trial is based solely on its claim that it did not receive prior notice of Summit's summary judgment motion and hearing.  We initially note that the historical trend is towards the liberal granting of motions for new trial filed after default judgments.  *Custom-Crete, Inc. v. K-Bar Servs.*, 82 S.W.3d 655, 658 (Tex. App.—San Antonio 2002, no pet.); *Norton v. Martinez*, 935 S.W.2d 898, 901 (Tex. App.—San Antonio 1996, no writ); *Miller v. Miller*, 903 S.W.2d 45, 47 (Tex. App.—Tyler 1995, no writ).  But bare allegations of lack of notice do not suffice; instead, the nonmovant must offer evidence, either in the form of an affidavit or live testimony.  *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 82 (Tex. 1992).  We thus turn to evidentiary record.

It is undisputed that Limestone's summary judgment motion contained a certificate of service complying with Texas Rule of Civil Procedure 21a.  "A certificate by a party or an attorney of record, or the return of an officer, or the affidavit of any person showing service of a

---

[10] *See Texas Dep't of Pub. Safety v. Friedel*, 112 S.W.3d 768, 771 (Tex. App.—Beaumont 2003, no pet.) ("The *Carpenter* [*v. Cimarron*] test for good cause is essentially the first and third elements of the *Craddock* test.").

notice shall be *prima facie* evidence of the fact of service." Tex. R. Civ. P. 21a. That the motion was mailed creates a rebuttable presumption that it was received. *Smith*, 53 S.W.3d at 817 (citing *Thomas v. Ray*, 889 S.W.2d 237, 238 (Tex. 1994)). But a presumption is not evidence, and it vanishes when opposing evidence is introduced that the notice in question was not received. *Cliff*, 724 S.W.2d at 780.

In this case, the presumption of service was rebutted in two ways. First, Limestone's attorney unequivocally denied receiving notice of the summary judgment motion, notice of the hearing, or even notice that the post office had attempted to deliver those items. The second is Summit's own affidavit. At most, Summit's affidavit and attachments demonstrate that the postal service attempted to deliver Summit's summary judgment motion somewhere in the ZIP code corresponding to Limestone's attorney's office and that the package was eventually returned "unclaimed." None of this constitutes a certification by the postal service that it delivered the notices to Limestone, and it does not controvert Limestone's affidavit. *Rabie*, 982 S.W.2d at 197 (notations on envelope that postal service made two attempts to deliver summary judgment motion and returned it "unclaimed" did not controvert nonmovant's affidavit that he never received notice).[11] Instead, by demonstrating that the package was returned "unclaimed," Summit's affidavit constitutes further proof that Limestone did not receive it.

---

[11] As was observed in *Rabie*, there are means by which a party can establish that the postal service made a delivery, or attempted to do so, including various postal service forms or the affidavit of a postal clerk. *See Rabie v. Sonitrol of Houston, Inc.*, 982 S.W.2d 194, 197 (Tex. App.—Houston [1st Dist.] 1998, no pet.).

11

Summit places greatest reliance on two arguments predicated on Limestone's failure to obtain a hearing on its new trial motion. First, it relies on a line of cases suggesting that, regardless of the state of affidavit proof, a new trial movant waives its right to relief if it fails to obtain a hearing in order to afford the trial court the "opportunity to exercise its discretion." *See Fluty v. Simmons Co.*, 835 S.W2d 664, 668 (Tex. App.—Dallas 1992, no writ); *Shamrock Roofing Supply, Inc. v. Mercantile Nat'l Bank*, 703 S.W.2d 356, 357 (Tex. App.—Dallas 1985, no writ).[12] As Justice Guittard explained in *Shamrock*:

> We are unwilling to hold that an abuse of discretion occurs when the defaulting defendant fails to call his motion to the judge's attention and allows it to be overruled by operation of law. Trial judges have a heavy load of trials and contested motions. They cannot be expected to examine *sua sponte* all papers filed in their courts. They must rely on counsel to see that motions are set for hearing.

*Id.* at 357-58.[13]

---

[12] A panel of this court followed *Shamrock Roofing Supply, Inc. v. Mercantile Nat'l Bank*, 703 S.W.2d 356, 357 (Tex. App.—Dallas 1985, no writ) in a single unreported decision, *Truong v. Rose*. No. 03-99-00740-CV, 2000 Tex. App. LEXIS 5281, at *3 (Tex. App.—Austin Aug. 10, 2000, no pet.) (not designated for publication); *see also McGuire v. Commission for Lawyer Discipline*, No. 14-01-00920-CV, 2003 Tex. App. LEXIS 1510, at *4 (Tex. App.—Houston [14th Dist.] Feb. 20, 2003, pet. denied) (memorandum opinion) (holding no abuse of discretion in allowing new trial motion to be overruled by operation of law where defendant fails to call court's attention to motion). We note that unreported opinions are not binding authority. Tex. R. App. P. 47.7 ("[o]pinions not designated for publication by the court of appeals under these or prior rules have no precedential value but may be cited with the notation, '(not designated for publication)'"); *see also Ortega v. City Nat'l Bank*, 97 S.W.3d 765, 773 n.7 (Tex. App.—Corpus Christi 2003, no pet.).

[13] The *Shamrock* court insisted that it was not relying on the "presentment" requirement of the pre-1981 version of Texas Rule of Civil Procedure 329b. *Shamrock*, 703 S.W.2d at 358. That rule required a new trial movant to "present the same to the trial court," which the supreme court interpreted to require "no more than that the movant must call the motion to the court's attention and ask for a ruling upon the same or face the possibility that the court will not act and allow the motion

Limestone seeks to distinguish these decisions as involving instances where no request for a hearing on the motion for new trial was ever made. *See Continental Carbon Co. v. Sea-Land Serv., Inc.*, 27 S.W.3d 184, 188 (Tex. App.–Dallas 2000, pet. denied) (distinguishing *Shamrock* and finding no waiver where plaintiff twice obtained hearing dates that were postponed at request of defendant before new trial motion was overruled by operation of law).  Here, Limestone did purport to request a hearing in its transmittal letter to the Williamson County District Clerk, although these steps were ineffective under the local rules of Williamson County, which require hearing requests to be directed to the court coordinator.  Williamson County (Tex.) Dist. Ct. Loc. R. III, B.1.[14]  We need not address the implications, under the *Shamrock* line of cases, of Limestone's noncompliance with the Williamson County hearing procedures because we are bound to follow authority from our court that is contrary to *Shamrock*.[15]

In *Smith v. Holmes*, we considered a new trial motion supported by an affidavit from a prisoner denying receipt of a notice of trial setting before a post-answer default judgment was taken against him.  The appellees presented evidence not only of a signed certificate of service, but also a signed "green card" (presumably executed by someone else at the prison) acknowledging receipt

---

to be overruled by operation of law." *Moore v. Maudlin*, 428 S.W.2d 808, 809 (Tex. 1968).  Rule 329b was amended in 1981 to delete the "presentment" requirement. *See Cecil v. Smith*, 804 S.W.2d 509, 511 n.3 (Tex. 1991).

[14] Limestone does not dispute the applicability of these rules. *See* Tex. R. Civ. P. 3a.

[15] Nor do we address whether we can square *Shamrock* with Texas Supreme Court precedent. *See Strackbein v. Prewitt*, 671 S.W.2d 37, 38 (Tex. 1984) ("It is sufficient that the movant's motion and affidavits set forth facts which, if true, would negate intentional or consciously indifferent conduct.").

13

of service by certified mail. We held that an affidavit by the prisoner unequivocally denying receipt of the notice not only overcame the *prima facie* presumption of notice, but conclusively established lack of notice where the *appellee* who had taken the default judgment had not requested an evidentiary hearing. *Smith*, 53 S.W.3d at 817-18. We relied on the proposition that "[o]n a motion for new trial, the trial court is bound to accept as true the affidavits of the movant, unless the *opponent* requests an evidentiary hearing." *Id.* at 818 (emphasis added). Thus, under our precedents, Summit had the burden to request an evidentiary hearing if it wanted to prevent the trial court from taking Limestone's affidavit as true. Limestone did not waive its rights by failing to obtain such a hearing.[16]

In its other chief argument, Summit urges that if the hearing had been held, the trial court would have been within its discretion to overrule the motion. In particular, Summit suggests that the evidence was such that the trial court would have been within its discretion to overrule Limestone's motion on the basis that Limestone had constructive notice under the rule of *Gonzales v. Surplus Ins. Serv.*, 863 S.W.2d 96, 101–02 (Tex. App.—Beaumont 1993, writ denied) (constructive notice of document can be imputed to party where there is evidence that party engaged in "selective refusal/acceptance" of certified mail). We disagree for two reasons.

Because there was no hearing, the trial court was required to take Limestone's affidavit as true. *Smith*, 53 S.W.3d at 818. We will not speculate as to what the proof at a hearing might have been, much less evaluate the trial court's disposition of Limestone's new trial motion on

---

[16] For the same reasons, we attribute no significance to what Summit characterizes as Limestone's lack of diligence in obtaining a hearing or in opposing severance.

14

that basis, especially where it was Summit's burden to request the hearing. *Id*. And we do not view the evidence in the affidavits as rising to the level from which the trial court could have concluded that Limestone engaged in selective refusal or acceptance of certified mail. The mere fact that the package was returned unclaimed is not evidence that Limestone refused or evaded delivery. *Rabie*, 982 S.W.2d at 197. At most, Limestone's affidavit stops short of conclusively negating the possibility that some other person in Limestone's attorney's office, without his knowledge, declined to accept delivery of Summit's summary judgment papers.[17] But it is not affirmative evidence that such selective refusal or evasion occurred. *Rabie*, 982 S.W.2d at 197 n.3 (distinguishing *Gonzalez* as involving evidence of "repeated instances of selective acceptance and refusal of certified mail"); *cf. Smith*, 53 S.W.3d at 818 (nonmovant's uncontested denial that he received notice overcame any inference that others at prison who signed the green card forwarded the notice to him). Again, it was Summit's burden to adduce such evidence, if it existed.

Because Limestone's affidavit proof thus establishes that it did not receive notice of Summit's summary judgment motion or hearing, we are compelled to hold that the trial court abused its discretion in overruling Limestone's motion for new trial by operation of law.

---

[17] While unequivocally denying having personal notice of Summit's summary judgment papers or their attempted delivery, Limestone's attorney goes on to observe that a lawyer with whom he shared an office and a secretary were authorized to accept his mail, and did so "routinely" when he was out of the office. They were thus his agents for these purposes, and their actions in this regard would be imputed to him. *See Elite Towing, Inc. v. LSI Fin. Gr.*, 985 S.W.2d 635, 642-43 (Tex. App.—Austin 1999, no pet.). Limestone's attorney added that he had been out of the office on March 28, the day the post office attempted to deliver Summit's papers. He goes no farther than to state that, "*To my knowledge*, no mail has ever been refused by failure of the other attorney or his secretary to sign for mail addressed to me." (emphasis added).

15

## CONCLUSION

We reverse the judgment of the trial court and remand for a new trial.

_____

Bob Pemberton, Justice

Before: Justices Kidd, B. A. Smith and Pemberton

Reversed and Remanded

Filed:   August 26, 2004

16