

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

## NO. 2-06-199-CV

PETER C. KERN                                                    APPELLANT

V.

JOE BILL SPENCER, INDIVIDUALLY AND AS                           APPELLEES
PART OWNER OF NATURE LEISURE TIMES, L.L.C.;
AND JANICE L. SPENCER, AN INDIVIDUAL;
MARY SPENCER, AN INDIVIDUAL; BRENT
PENNINGTON, AN INDIVIDUAL; RUWACH
RESORTS, INC.; JLS CONSTRUCTION,
INC.; AND NATURE LEISURE TIMES,
LLC D/B/A LANTANA LODGE

------------

FROM THE 393RD DISTRICT COURT OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

I.      **Introduction**

---

[1] *See* TEX. R. APP. P. 47.4.

This is an appeal from a "default" no-evidence summary judgment. Appellant Peter C. Kern argues that the trial court erred by failing to grant his motion for new trial after it granted Appellees' no-evidence motions for summary judgment, to which Kern did not file responses. Because Kern failed to establish that his failure to file summary judgment responses was an accident or mistake, we affirm.

## II. Factual and Procedural Background

### A. The Lawsuit

On August 27, 2004, attorney Ronald Kurpiers filed suit on behalf of Kern against Appellees Joe Bill Spencer, Janice L. Spencer, Mary Spencer, and JLS Construction, Inc. (Spencer) and Appellees Brent Pennington, Individually and d/b/a Favor Investment Co., LTD., Favor Investment Co., LTD., and Ruwach Resorts, Inc. (Pennington), alleging breach of contract, fraudulent misrepresentation, tortious interference of a business relationship, and civil conspiracy.[2] Both Pennington and Spencer filed general denials. On July 13, 2005, the trial court held a status conference and instructed the parties to agree to a trial date. The parties entered an agreed scheduling order and discovery control plan that contained a January 15, 2006 discovery deadline

---

[2] Kern also sued individual defendant Arnon C. Boyd, who is not a party to this appeal.

and a March 27, 2006 trial date. On October 27, 2005, Pennington filed an amended answer and original counterclaim against Kern, claiming unjust enrichment and money had and received. On November 1, 2005, Spencer filed an amended answer and original counterclaim against Kern, claiming slander of title, tortious interference with prospective relations, fraudulent misrepresentation, negligence, and negligent misrepresentation.

## B. The Summary Judgment

On February 1, 2006, after the discovery cut-off, Pennington filed a no-evidence motion for summary judgment as to each of Kern's claims. That same day, Spencer filed both a no-evidence motion for summary judgment and a traditional motion for partial summary judgment as to each of Kern's claims. The traditional motion for partial summary judgment was predicated in part on deemed admissions resulting from Kern's failure to respond to Spencer's request for admissions.

The trial court set these motions for submission without hearing on February 27, 2006. Kern did not file responses to the motions. On February 27, both Pennington and Spencer submitted proposed orders to the trial court to grant their summary judgment motions. Kern did not respond to the proposed orders. On March 10, 2006, the trial court signed the orders granting

3

all three summary judgment motions.  Pennington and Spencer then filed a joint motion for severance and final judgment pertaining to the claims on which summary judgment had been granted.  On March 20, 2006, the trial court ordered that all of Kern's claims against Pennington and Spencer be severed into a separate cause number so that the granting of these summary judgment motions would be final and appealable.

### C.    The Motion for New Trial

On April 7, 2006, Kern (represented by new counsel) filed a motion for new trial and reconsideration of Pennington's and Spencer's motions for summary judgment, alleging that Kern's failure to respond to the motions for summary judgment was not the result of an intentional failure to respond or conscious indifference, but the result of accident or mistake.  The motion included affidavits by Kern and Kurpiers.  Kern's affidavit contains numerous sections detailing why he believes there exist genuine issues of material facts concerning each of his causes of action.  Kurpiers's affidavit alleges that Kurpiers never received any notices of hearings or submission dates regarding the summary judgments because they "were never brought to my attention by my staff."  Further, Kurpiers's affidavit states that his failure to respond

> was not intentional on my part or the result of a cons[cious] indifference, but was rather a result of my not having received any

4

notices of any hearings or submission dates on such [m]otions, or it was the result of a mistake or accident by my office personnel in not bringing the notices to my attention or placing the hearing or submission dates on my firm's calendering system.

Pennington and Spencer filed responses to Kern's motion for new trial. Spencer claimed that, other than filing his original petition, Kern "has taken no other substantive action to prosecute this case." Spencer explained that Kern had never responded to discovery, refused to appear at his deposition, and failed to respond to Spencer's no-evidence motion for summary judgment and traditional motion for partial summary judgment. Spencer also asserted that Kern, through Kurpiers, had received proper notice concerning the summary judgment motions.

In support of his assertions regarding proper notice, Spencer attached to his response the affidavit of Jason Katz, Spencer's attorney. Katz's affidavit states that copies of Spencer's no-evidence motion for summary judgment and traditional motion for partial summary judgment were sent via certified mail to Kurpiers's office on February 1, 2006. Copies of certified mail "green cards" attached to Katz's affidavit show that Kurpiers's office received copies of their summary judgment motions on February 6, 2006, and that Tanya Ortiz, Kurpiers's receptionist, signed the green cards. Katz's affidavit also states that copies of notices of submission on both motions for summary judgment and

5

proposed orders concerning these motions were sent to Kurpiers's office via certified mail on February 3, and February 27, 2006. Copies of certified mail "green cards" attached to Katz's affidavit show that Kurpier's office received copies of these documents on February 6, and March 6, 2006, and that Tanya Ortiz signed the green cards. Katz further avers that he called and left a voice message concerning the motions for summary judgment for Kurpiers on February 1, 2006. Katz also states in his affidavit that he sent Kurpiers a facsimile of the notice of hearings on the motions for summary judgment. A copy of the facsimile transmission concerning this notice was attached to Katz's affidavit, showing that Kurpiers's office received the facsimile on February 3, 2006.

Pennington's response stated that after Kern had filed his petition, Kern had done "virtually nothing to prosecute this matter," including never having sent discovery or taken depositions. Like Spencer, Pennington claimed in his response that Kern, through Kurpiers, had received proper notice concerning the summary judgment motions. The affidavits of Sherry L. Shipman—Pennington's attorney—and Sharon E. Marceau—Shipman's legal assistant—were attached to Pennington's response. Attached to these affidavits were copies of certified "green cards" showing that Tanya Ortiz from Kurpiers's office had signed for

6

and received copies of Pennington's no-evidence motions for summary judgment on February 6, 2006, and Pennington's proposed orders on March 3, 2006.

### D.    Hearing on the Motion for New Trial

The trial court heard the motion for new trial on May 22, 2006.  Kurpiers did not appear at the hearing.  At the hearing, both Pennington's and Spencer's attorneys testified that Kurpiers had a recurring pattern of failure to prosecute the case, failure to show up for depositions, and failure to respond to discovery.[3]

Pennington's attorney, Shipman, testified that when she sent requests for disclosure, Kurpiers failed to initially respond and that "on the eve of a hearing on the motion to compel . . . disclosure," Kurpiers finally offered the excuse

---

[3]⬆ We note that the statements made by Kern's attorney and each of Appellees' attorneys were not made under oath. The general rule is that an attorney's statements must be under oath to constitute evidence. *Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997).  However, such error is waived by failure to object when the opponent knew or should have known an objection was required. *Id.*; *Moore v. Sutherland*, 107 S.W.3d 786, 793 (Tex. App.—Texarkana 2003, pet. denied); *Knie v. Piskun*, 23 S.W.3d 455, 463 (Tex. App.—Amarillo 2000, pet. denied).  The evidentiary nature of the hearing on motion for new trial in this case was obvious, particularly given the number of objections to specific statements made by the attorneys present, and the court's ruling on these objections.  The court at one point even granted a running objection.  Because none of the parties objected to the lack of oath when each attorney made statements, we treat their statements as evidence.

that he did not receive notice. Shipman stated, "[T]hat's not the last time that we heard that verse of this song." She testified that even though Kurpiers was notified of Kern's deposition, Kurpiers did not initially respond, but later said that he never got the notice of deposition. Shipman said that Kurpiers postponed a deposition multiple times and that, on the day of the deposition, "we're all assembled in Denton in my office, and Mr. Kurpiers called from Florida and says he can't be there." Shipman further testified that, in addition to Kurpiers not responding to her notices for discovery and motions for summary judgment, she consistently had problems getting "any messages through to him," and that Kurpiers did not respond to messages left on voice mail or with a person at his office.

Spencer's attorney, Katz, likewise testified that Kurpiers had failed to show for a deposition. Katz said that Kurpiers did not respond to discovery and that when Katz filed Spencer's motion to compel, Kurpiers still did not respond. Further, Katz testified that he had sent three letters to Kurpiers concerning the motion for summary judgment, the partial motion for summary judgment, and the notice of hearing. Katz said Kurpiers did not respond to any of these letters.

On May 30, 2006, the trial court denied the motion for new trial as to Pennington. On June 6, 2006, the trial court denied the motion for new trial as to Spencer. This appeal ensued.

## III.  Discussion

In two issues, Appellant argues that the trial court erred by not applying the *Craddock*[4] test and that—given the evidence of this case in light of that test—the trial court abused its discretion in denying his motion for new trial.

### A.  Standard of Review

The parties disagree about what case law guides our review of the trial court's denial of Kern's motion for new trial. Kern argues that the three-element *Craddock* test—as modified for the default summary judgment context by a line of case including *Medina v. Western Waste Industries*—applies. *Craddock,* 134 Tex. at 392–93, 133 S.W.2d at 126; *Medina v. W. Waste Indus.*, 959 S.W.2d 328, 330 (Tex. App.—Houston [14th Dist.] 1997, pet. denied). Spencer argues that the two-element test articulated in *Carpenter v. Cimarron Hydrocarbons Corp.* applies. 98 S.W.3d 682, 686 (Tex. 2002).

Under the *Craddock* test, a trial court abuses its discretion by denying a motion for new trial following a no-answer default judgment if the defaulting

---

[4] *Craddock v. Sunshine Bus Lines, Inc.*, 134 Tex. 388, 392–93, 133 S.W.2d 124, 126 (1939).

9

party establishes (1) that the failure to file an answer before judgment was not intentional or the result of conscious indifference but was due to a mistake or an accident; (2) the motion for new trial sets up a meritorious defense; and (3) granting a new trial will occasion no delay or otherwise work an injustice to the plaintiff. *Craddock*, 134 Tex. at 392–93, 133 S.W.2d at 126. In *Medina*, the fourteenth court of appeals applied the *Craddock* test to a motion for new trial following a no-response summary judgment, but it held that the second element of the *Craddock* test should be replaced with the requirement that the motion for new trial allege facts and contain proof of a genuine issue of material fact. *Medina*, 959 S.W.2d at 330, 331 n.3; *see also Washington v. McMillan*, 898 S.W.2d 392, 396 (Tex. App.—San Antonio 1995, no writ); *Gonzales v. Surplus Ins. Servs.*, 863 S.W.2d 96, 102 (Tex. App.—Beaumont 1993, writ denied); *Krchnak v. Fulton*, 759 S.W.2d 524, 528–29 (Tex. App.—Amarillo 1988, writ denied); *Costello v. Johnson*, 680 S.W.2d 529, 531 (Tex. App.—Dallas 1984, writ ref'd n.r.e.).

In *Cimarron*, the supreme court specifically disapproved *Medina* and held that the *Craddock* test does not apply to no-response summary judgment cases in which the summary judgment nonmovant discovers its failure to file a response before the trial court renders judgment. *Cimarron*, 98 S.W.3d at 686.

10

But the court also stated that "[w]e do not decide today whether *Craddock* should apply when a nonmovant discovers its [failure to file a summary judgment response] after the summary-judgment hearing or rendition of judgment." *Id.* The court went on to articulate a new test to determine whether a trial court should grant a summary judgment nonmovant's motion for leave to file a late summary judgment response when the nonmovant discovers its mistake before the summary judgment hearing:

> [A] motion for leave to file a late summary-judgment response should be granted when [a litigant] establishes good cause by showing that the failure to timely respond (1) was not intentional or the result of conscious indifference, but the result of accident or mistake, and (2) that allowing the late response will occasion no undue delay or otherwise injure the party seeking summary judgment.

*Id*. at 688.

In this case, Kern argues that he and Kurpiers had no notice of the summary judgment motions before the trial court rendered judgment. Thus, this case is unlike *Cimarron* and falls under the question the supreme court specifically reserved in *Cimarron*, namely, whether *Craddock* applies when a nonmovant discovers its failure to file a response after the rendition of judgment. *See id.* at 686.[5]

---

[5] The supreme court has not answered this question in any post-*Cimarron* decision.

11

Regardless of whether *Craddock* or *Cimarron* applies to this case, the first element of the two tests is the same: the summary judgment nonmovant must show that its failure to file a timely summary judgment response was not intentional or the result of conscious indifference, but the result of accident or mistake. *Craddock*, 134 Tex. at 392, 133 S.W.2d at 126; *see Cimarron*, 98 S.W.3d at 688. Thus, without deciding whether *Craddock*, *Cimarron*, or some as-yet unarticulated third test applies, we will review the record to determine whether Kern showed that his failure to file timely summary judgment responses was not intentional or the result of conscious indifference, but the result of accident or mistake.

Under both *Craddock* and *Cimarron*, we review the trial court's ruling for an abuse of discretion. *Craddock*, 134 Tex. at 393, 133 S.W.2d at 126; *see Cimarron*, 98 S.W.3d at 686. The test for abuse of discretion is whether the trial court acted arbitrarily or without reference to guiding legal principles. *Cire v. Cummings*, 134 S.W.3d 835, 839 (Tex. 2004). A trial court abuses its discretion if it misinterprets or misapplies the law. *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004).

**B.    Conscious Indifference vs. Accident or Mistake**

Conscious indifference is defined as "the failure to take some action that would seem obvious to a reasonable person in the same circumstance." *In re A.P.P.*, 74 S.W.3d 570, 573 (Tex. App.—Corpus Christi 2002, no pet.). This standard requires more than the showing of negligence. *Levine v. Shackelford, Melton & McKinley, L.L.P.,* 248 S.W.3d 166, 168 (Tex. 2008). The controlling factor under this analysis is "the absence of an intentional failure to answer." *Craddock*, 134 Tex. at 392, 133 S.W.2d at125; *In re A.P.P.*, 74 S.W.3d at 573. A party must provide some excuse, but not necessarily a good excuse, to show that its failure to answer was accidental. *Craddock*,134 Tex. at 391–92, 133 S.W.2d at 125. When a defaulting party relies on an agent or representative to file responses in a suit, it must establish that the failure to file responses was not the result of the party's or the agent's conscious indifference. *Estate of Pollack v. McMurrey*, 858 S.W.2d 388, 391 (Tex. 1993); *Lowe v. Lowe*, 971 S.W.2d 720, 723 (Tex. App.—Houston [14th Dist.] 1998, pet. denied).

Conclusory allegations are insufficient. *See Cont. Cas. Co. v. Davilla*, 139 S.W.3d 374, 382 (Tex. App.—Fort Worth 2004, pet. denied); *see also Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 82 (Tex. 1992). However,

13

uncontroverted factual allegations in the movant's motion for new trial and accompanying affidavits, if true, negate intent or conscious indifference. *See Jackson v. Mares*, 802 S.W.2d 48, 50 (Tex. App.—Corpus Christi 1990, writ denied). If the nonmovant provides controverting evidence showing conscious indifference by the movant, then the issue becomes a fact question for the trial court to determine. *Id.* We review all of the evidence in the record to determine if the appellant's allegations are controverted. *Moya v. Lozano*, 921 S.W.2d 296, 299 (Tex. App.—Corpus Christi 1996, no writ).

The evidence before the trial court was as follows: (1) Kurpiers's staff received six different certified mailings[6]—giving him notice of the submission date with ample time to file a response in advance of submission; (2) uncontroverted statements by both Pennington's and Spencer's attorneys describing Kurpiers's recurring pattern of failure to prosecute the case, failure to show up for depositions, and failure to respond to discovery; (3) the

---

[6] The trial court properly imputed receipt of these documents to Kurpiers even though his receptionist signed for them. An attorney is deemed to have received notice when the receipt for notice is signed by the attorney's agent or employee. *See, e.g., Elite Towing, Inc. v. LSI Fin. Group*, 985 S.W.2d 635, 643 (Tex. App.—Austin 1999, no pet.) (holding that proper notice of a trial setting was imputed on appellant's attorney when certified notice was received and signed for by another attorney, who was with another firm in the same building, who had on occasion signed for mail on behalf of appellant's attorney).

testimony that Kurpiers often used the excuse of not having been notified or not having received notice concerning those events; and (4) Kurpiers's affidavit, which contains only conclusory statements that he did not act with conscious indifference and that his failure to receive the notices and motions was the result of accident or mistake.

We hold that, based on the evidence presented to the trial court, the trial court was within its discretion in finding that Kern's failure to file any responses to the summary judgment motions was intentional or the result of conscious indifference and that Kern has failed to show that the trial court, in denying his motion for new trial, acted arbitrarily or without reference to any guiding legal principles under either *Craddock* or *Cimarron*. *See Dolgencorp of Tex., Inc. v. Lerma*, 241 S.W.3d 584, 592–93 (Tex. App.—Corpus Christi 2007, pet. filed) (holding that trial court did not abuse its discretion in finding that counsel's failure to appear was intentional or the result of conscious indifference even though counsel had informed the court of a scheduling conflict due to a separate trial in another county but did not seek a continuance or postponement); *see also Levine,* 248 S.W.3d at 169 (holding that, in a default judgment setting, a pattern of ignoring deadlines and warnings from opposing party amounts to conscious indifference). We overrule both of Kern's issues.

15

**IV. Conclusion**

Having overruled both of Kern's issues, we affirm the trial court's judgment.

ANNE GARDNER
JUSTICE

PANEL B:    DAUPHINOT, GARDNER, and MCCOY, JJ.

DELIVERED: July 24, 2008

16