UTILITIES PIPELINE COMPANY, Appellant,

v.

AMERICAN PETROFINA MARKETING, Appellee.

No. 05–87–01194–CV.

Court of Appeals of Texas, Dallas.

Oct. 12, 1988.

Rehearing Denied Nov. 23, 1988.

Roger F. Claxton, Dallas, for appellant.

John W. Bickel, Curtis L. Marsh, Dallas, for appellee.

Before WHITHAM, BAKER and KINKEADE, JJ.

WHITHAM, Justice.

In this shipper-carrier dispute, the appellant-carrier, Utilities Pipeline Company, appeals from a summary judgment in favor of the appellee-shipper, American Petrofina Marketing, Inc. In its sole point of error, the carrier contends that the trial court erred in granting the shipper's motion for partial summary judgment and entering a final judgment thereon because there was summary judgment evidence sufficient to raise genuine issues of material fact as to the carrier's affirmative defense of flood and Act of God. We agree. Accordingly, we reverse and remand.

The shipper brought this suit against the carrier for damages resulting from the loss of the shipper's diesel fuel. The loss occurred when the carrier's pipeline (in which the shipper's diesel fuel was located) broke during a flood. The carrier pleaded, as an affirmative defense, that the pipeline break was due to a flood and an Act of God. After discovery, the shipper filed a motion for partial summary judgment as to liability. The trial court determined the carrier to be a common carrier (which was not disputed), granted the shipper's motion and

entered a partial summary judgment in favor of the shipper. The parties thereafter stipulated as to the amount and value of the diesel fuel which was lost, prejudgment interest and attorneys' fees. A final judgment disposing of the entire case was then entered.

The function of a summary judgment is not to deprive a litigant of his right to a full hearing on the merits of any real issue of fact, but to eliminate patently unmeritorious claims and untenable defenses. *Gulbenkian v. Penn*, 151 Tex. 412, 416, 252 S.W.2d 929, 931 (1952). The standards for reviewing a motion for summary judgment are well established. As mandated by the Supreme Court of Texas, they are:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management*, 690 S.W.2d 546, 548–49 (Tex.1985). It is not the purpose of the summary judgment rule to provide either a trial by deposition or a trial by affidavit, but rather to provide a method of summarily terminating a case when it clearly appears that only a question of law is involved and that there is no genuine issue of fact. *Gaines v. Hamman*, 163 Tex. 618, 626, 358 S.W.2d 557, 563 (1962).

With these principles in mind, we turn to the summary judgment proof the carrier asserts as sufficient to raise genuine issues of material fact as to the carrier's affirmative defense of flood and Act of God. In 1982, the carrier owned and operated a pipeline between Wichita Falls and Grapevine, Texas. On May 12, 1982, there was a rainstorm which resulted in flooding and sometime during the night of May 12 and early hours of May 13, the pipeline suffered a break at a creek crossing. At the time of the break, the shipper had a quantity of its diesel fuel in the pipeline, 578 barrels of which were lost. The tariff under which the carrier operated provided that it shall not be liable "for any loss or damage caused by the Act of God, ... [or] floods." Shortly after the break was reported, the United States Environmental Protection Agency investigated the spill and prepared a report containing various findings and conclusions as to the cause of the pipeline break. A copy of the report was attached to the carrier's response to the shipper's motion for partial summary judgment. We address the shipper's objection to the report later.

We summarize from the Environmental Protection Agency Spill Report:

The agency investigated and prepared a Spill Report relating to the accident which concluded that the cause of the spill was an 11 inch rainfall causing floodwaters which washed away a section of pipeline.

The flooding was heavier than usually expected in that location.

Photographs and notes were taken by the agency investigator. The notes reflect a nearby county bridge washout and the fact that the water washed away soil, exposing the pipeline.

The agency investigated the spill area and found "extensive evidence of excessive flooding in the area of the spill."

The discharge could not have been prevented using reasonable care because the "excessive rains would have washed out any type of pipeline."

In addition, the carrier offered the deposition of John Robert Buchanan, Jr., a longtime resident at the location of the pipeline break. We summarize Buchanan's testimony:

Buchanan has lived since 1929 in the vicinity of the point at which the pipeline broke; and since 1947 has lived approximately 150 yards from the point of the pipeline break.

The pipeline was in place when Buchanan moved to the area in 1929.

Prior to the date of the accident, the pipeline had never leaked or broken at that point.

The flood which was occurring at the time the pipeline broke was the worst that they had ever had in the area. There had never been that much rain in a concentrated period of time.

The water in the creek had never risen to the level it rose to during the flood.

The flood caused an unprecedented amount of erosion. Buchanan lost four feet of soil over an area covering approximately ½ acre and the creek bed widened by at least a third at the point of the break and tripled in width in other places. Prior to the flood, the creek bed width had remained virtually constant. A fence located 100 yards from the point of the break was destroyed by the flood. The water had never previously gotten high enough to wash that fence out.

The pipeline was supported at the creek crossing by A-frame supports which were anchored in the soil in concrete prior to the flood, but which were washed completely out of the ground after the flood. From at least 1947 to the time of the flood, the A-frames supported the pipeline with no problems.

The flood washed out a bridge just upstream and washed its 2″ × 12″ × 12′ oak timbers, trees up to 15″ in diameter, automobile tires and other debris downstream to the pipeline. Buchanan had never seen so much timber, trees, tires and other debris washed down the creek. A concrete and steel county bridge (located just downstream) which was built in approximately 1934 and which had never washed out before washed out during the flood. The bridge had to have 32 feet added to it after the flood.

The carrier regularly performed aerial inspection of the pipeline from low-flying airplanes in addition to periodic inspections on foot.

Before proceeding, we must determine whether the Environmental Protection Agency Spill Report is properly before us as summary judgment evidence. In its brief, the shipper tells us that it objected to the following portion of the report reading: "[Question] Could the discharge [of diesel fuel] have been prevented using reasonable care? [Answer] No [,] excessive rains would have washed out any type of pipeline." The shipper also tells us in his brief that it objected to this statement "on the grounds that it constituted inadmissible opinions, conclusions, conjecture, and hearsay." The shipper maintains that the trial court sustained this objection and did not consider the statement in deciding to grant summary judgment. At this point, we have a problem as to the record before us. The record contains no order of the trial court reduced to writing and filed in the papers of the cause. All that the shipper points to as record of the trial court's ruling on the shipper's objection to the statement is the following unsigned notation found on the trial court's docket sheet before us:

7–28–87 Obj. by P to opinions & conclusions in EPA reports sustained & such opinions not considered by ct in SJ hearing

We emphasize that the shipper does not challenge the way in which the report was tendered as summary judgment evidence. Further, we note that the shipper does not complain of any portion of the report except the above quoted question and response pertaining to reasonable care. Therefore, we treat the report as properly before us in its entirety unless the shipper's quoted objection eliminates only the response to the reasonable care question contained in the report. Our inquiry thus narrowed, we focus on the problem of an appellate record which contains no order of the trial court reduced to writing and filed in the papers of the cause sustaining an objection to summary judgment evidence, but which contains a docket sheet entry by an unknown hand suggesting a ruling on the objection.

■■■ Given our record, we look for guidance to our sister court of appeals' resolution of the problem in a similar case. *Manoogian v. Lake Forest Corporation,* 652 S.W.2d 816 (Tex.App.—Austin 1983, writ ref'd n.r.e.) (The party objecting to

Manoogian's summary judgment affidavit argued that the affidavit was not properly a part of the summary judgment proof since it was objected to at the summary judgment hearing and since the trial court sustained the objection.) Here, as in *Manoogian*, the problem posed is not one easily resolved by reference to on-point authority. *Manoogian*, 652 S.W.2d at 819. Here, as in *Manoogian*, the problem arises because the objecting party failed to adhere to the venerable rule of practice that orders of the court must be reduced to writing and filed in the papers of the cause. *Manoogian*, 652 S.W.2d at 819. Here, as in *Manoogian*, we hold that, in general, orders of the trial court to be effectual must be entered of record. *Manoogian*, 652 S.W.2d at 819. In the present case, no order of the trial court sustaining the objection was entered of record. Moreover, the docket sheet cannot stand as an order or substitute for such record. *Harris County Welfare Unit v. Caloudas*, 590 S.W.2d 596, 598 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ). Indeed, a court's docket notation dated 7–27–73 which recites: "Bill of Review granted and new trial granted as to property rights only" has no legal effect, because it is undisputed that said docket notation was never made a part of the court's minutes, and no formal order was ever entered by the trial court pursuant thereto. Any order or judgment to be effective must be entered of record. *Kocman v. Kocman*, 581 S.W.2d 516, 518 (Tex.Civ.App.—Waco 1979, no writ). Consequently, we hold that an order of a trial court sustaining an objection to summary judgment evidence to be effective must be reduced to writing, signed by the trial court and entered of record. We hold further, therefore, that a docket sheet entry does not meet this requirement. We conclude, therefore, that the Environmental Protection Agency report was properly a part of the summary judgment evidence in the present case. *See Manoogian*, 652 S.W.2d at 819.

■ With the factual background provided by both the Buchanan deposition and the Environmental Protection Agency report before us as summary judgment proof, we first address the extent of the carrier's affirmative defense. In this connection, we must decide whether "flood" and "Act of God" are two separate affirmative defenses. We conclude that the carrier asserts but the one affirmative defense of Act of God. We reach this conclusion for three reasons. First, the carrier uses the singular "defense" in its sole point of error. Second, we conclude that a "flood" defense grounded on the tariff would be void as against public policy. Under the general common law rule, a shipper of goods by common carrier makes a prima facie case of carrier liability by showing that the shipment was in good condition when delivered to the carrier at place of origin and in damaged condition when delivered by the carrier at destination. The carrier may then escape responsibility for the damage only by showing that it was caused solely by one or more of four excepted perils: (1) an Act of God; (2) the public enemy; (3) the fault of the shipper, or (4) the inherent nature of the goods themselves. *Missouri Pacific R.R. Co. v. Elmore & Stahl*, 368 S.W.2d 99, 101 (Tex. 1963); *aff'd*, 377 U.S. 134, 84 S.Ct. 1142, 12 L.Ed.2d 194 (1964). The general rule in Texas is that a carrier may not limit or restrict its liability as it exists at common law. *Atlas Van Lines, Inc. v. Brookes*, 692 S.W.2d 123, 125 (Tex.App.—Amarillo 1985, no writ). Any attempt by the carrier to restrict its liability in this regard by provisions in the contract of carriage or the tariff is against public policy and void. *Travelers Insurance Co. v. Delta Air Lines, Inc.*, 498 S.W.2d 443, 446 (Tex.Civ. App.—Texarkana 1973, no writ). Third, at oral argument the shipper virtually conceded that it could not restrict its liability by the "flood" provisions in the tariff and that this appeal involves but the one affirmative defense—an Act of God. Therefore, we proceed to dispose of this appeal on the basis of whether there was sufficient summary judgment evidence to raise a genuine issue of material fact as to the carrier's affirmative defense of Act of God.

■ The shipper maintains that it met its burden to make a prima facie case of

carrier liability. We agree and the carrier does not contend otherwise. Thus, the task shifts to the carrier to meet its burden on motion for summary judgment to establish a genuine issue of material fact as to its affirmative defense of Act of God. Consequently, we must know the definition of "Act of God" in the context of the facts of the present case. To make that determination we turn to our Supreme Court's opinion in *Scott v. Atchison, T. & S.F. Ry. Co.,* 572 S.W.2d 273 (Tex.1978). *Scott* was a personal injury suit brought under the Federal Employers' Liability Act, 45 U.S.C.A., § 51 et seq. The defendant railroad company asserted as an affirmative defense that the accident and Scott's injuries were caused solely by an "Act of God" in the form of an unprecedented rainfall which caused flood water to flood Caney Creek and wash out the roadbed and tracks at the place of derailment. *Scott,* 572 S.W.2d at 275. In *Scott,* the Supreme Court directed that upon retrial the definition of "Act of God" requested by the railroad company at the first trial should be contained in the jury charge. The requested definition read:

> You are instructed that by the term "Act of God" as used in this Charge is meant an accident that is due directly and exclusively to natural causes without human intervention and which no amount of foresight or care reasonably exercised could have prevented. The accident must be one occasioned by the violence of nature, and all human agency is to be excluded from creating or entering into the cause. The terms implys [sic] the intervention of some cause not of human origin and not controlled by human power. If the derailment resulted in whole or in part from human negligence it was not an "Act of God."

*Scott,* 572 S.W.2d at 279, n. 9. Hence, we treat this definition of "Act of God" as the appropriate definition of that phrase in the context of the facts of the present case. Given this definition of "Act of God," we turn to the summary judgment proof relied upon by the carrier as raising genuine issues of material fact as to its affirmative defense of Act of God. Taking the summary judgment evidence favorable to the carrier as true as we must and indulging every reasonable inference in favor of the carrier as we must and resolving any doubts in favor of the carrier as we must, we reach these conclusions. We conclude that the summary judgment proof raised genuine issues of material fact as to whether the pipeline suffered a break that was due directly and exclusively to natural causes without human intervention and which no amount of foresight or care reasonably exercised could have prevented. We conclude further that the summary judgment proof raised genuine issues of material fact as to whether the pipeline break was occasioned by the violence of nature, excluding all human agency from creating or entering into the cause of the break. We conclude further that the summary judgment proof raised genuine issues of material fact as to whether the pipeline break resulted from the intervention of flood waters not of human origin and not controlled by human power. We conclude further that the summary judgment proof raised genuine issues of material fact as to whether the pipeline break resulted in whole or part from human negligence. It follows from these conclusions, that the trial court erred in granting summary judgment in favor of the shipper and against the carrier. We sustain the carrier's sole point of error.

Our conclusions noting the genuine issues of material fact we see as raised by the summary judgment evidence are not to be read as instructions to the trial court as to the manner or content of jury questions or findings of fact on retrial. We give no direction to the trial court as to how it proceeds on retrial.

REVERSED AND REMANDED.