Sharon EADS, Appellant,

v.

AMERICAN BANK, N.A.,
et al., Appellees.

No. 10–92–024–CV.

Court of Appeals of Texas,
Waco.

Nov. 25, 1992.

while driving or operating a motor vehicle in a public place."

Jack N. Price, Austin, for appellant.

Damon L. Reed, Vance Dunnam, Dunnam & Dunnam, Waco, for appellees.

Before CUMMINGS and VANCE, JJ.

## OPINION

VANCE, Justice.

Sharon Eads was employed by American National Bank of Waco in 1981 and was discharged in 1989. During the intervening years, she was promoted with commensurate increases in salary and American Bank merged with American National Bank to form American Bank, N.A. After being discharged, she sued the bank and M.N. Bostick and William C. Landiss, officers and directors of the bank, alleging a single cause of action for tortious interference with her employment relationship with the bank, actual damages, and exemplary damages. The bank asserted that the relationship was at-will and that it was entitled to discharge her at any time with or without cause. Bostick and Landiss asserted that they are not liable individually because each acted within the course and scope of his employment, that they enjoy a privilege as officers of the bank acting within the course and scope of their employment, and that their actions were taken in good faith on behalf of the bank and were therefore

legally justified or excused. The defendants filed motions for summary judgment, attacking elements of Eads' cause of action and asserting that their affirmative defenses were established as a matter of law. Eads responded, but the defendants objected that her summary judgment proof contained hearsay and conclusions and that her deposition excerpts were not properly authenticated. The court granted a summary judgment in favor of all defendants.

Eads complains in a single point of error that the court erred in granting summary judgment because "legally cognizable fact issues of tortious interference with appellant's employment contract were raised by the summary judgment proof."

■■■ A defendant who moves for a summary judgment must show that no material issue of fact exists as to plaintiff's cause of action. *Griffin v. Rowden*, 654 S.W.2d 435, 435–36 (Tex.1983). A defendant who moves for a summary judgment without asserting an affirmative defense must disprove as a matter of law one or more of the elements essential to the plaintiff's cause of action. *Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex.1991). A defendant may establish an affirmative defense by proving all of the elements of the affirmative defense as a matter of law, demonstrating that there is no genuine issue of material fact. *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984). A summary judgment for a defendant disposing of the entire case is proper only if, as a matter of law, plaintiff could not succeed upon any theory plead. *Interstate Fire Ins. v. First Tape, Inc.*, 817 S.W.2d 142, 144 (Tex.App.—Houston [1st Dist.] 1991, writ denied).

Eads' brief does not contend that her employment was not at-will nor that the bank had no right to terminate her employment. The brief recognizes that a corporate employee is privileged to interfere with his employer's contractual relationships with third parties as long as the interferer acts in good faith and believes that what he does is best for the corporation. *See Maxey v. Citizens National Bank of Lubbock*, 507 S.W.2d 722, 726 (Tex.1974). Thus, her argument is that a cause of action exists for tortious interference with an at-will employment contract; that officers of a corporation have a right to induce the corporation to violate a contractual obligation only if they act in good faith and with the belief that what they do is in the best interest of the corporation; and that the summary-judgment proof raises fact issues about Bostick's and Landiss' motives.

■■■ An at-will employment agreement can be the subject of a claim of tortious interference. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 688 (Tex.1989). A cause of action for tortious interference with a contract is established upon a showing that (1) a contract existed between the plaintiff and a third party that was the subject of interference, (2) the defendant's act of interference was willful and intentional, (3) the intentional act of the defendant was a proximate cause of damage to the plaintiff, and (4) actual damage and loss to the plaintiff resulted. *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 939 (Tex.1991). However, one is privileged to interfere with a contract of another if it is done in the bona fide exercise of his own rights or if he has an equal or superior right in the subject matter to that of the plaintiff. *Sakowitz, Inc. v. Steck*, 669 S.W.2d 105, 107 (Tex.1984). A claim of legal justification or excuse is an affirmative defense to a tortious-interference claim. *Sterner*, 767 S.W.2d at 690.

■■■ The bank could not tortiously interfere with its own contract. *See Schoellkopf v. Pledger*, 778 S.W.2d 897, 902 (Tex. App.—Dallas 1989, writ denied). Bostick and Landiss were officers and members of the board of directors—not strangers to the contract. *See Gonzales v. Gutierrez*, 694 S.W.2d 384, 388 (Tex.App.—San Antonio 1985, no writ). As such, they were privileged to interfere with the contract in the bona fide exercise of their own rights as directors and had an equal or superior right in the subject matter to Eads. *See Sakowitz, Inc.*, 669 S.W.2d at 107.

■ Our only inquiry, then, is whether there is summary-judgment evidence that raises a fact issue about malice on the part of Bostick or Landiss.

■ The defendants objected to Eads' summary-judgment evidence on the grounds that it contained hearsay and conclusions and that her deposition excerpts were not properly authenticated. However, no order sustaining their objections appears in the record. We agree with the Dallas Court of Appeals that an order sustaining an objection to summary-judgment evidence must be reduced to writing, signed, and entered of record. *Utilities Pipeline Co. v. American Petrofina Mktg.,* 760 S.W.2d 719, 723 (Tex.App.—Dallas 1988, no writ). A docket-sheet entry is not sufficient. *Id.* Absent an order determining the objections, an appellate court has no way of knowing if the objections were presented to the trial court, what disposition the court made of the objections, or whether the court considered the objected-to matters in granting the summary judgment.

The decision in *City of Houston v. Clear Creek Basin Authority* halted the practice whereby an appellate court found itself in the position of having to search through an appellate record to ascertain whether a genuine issue of material fact existed. *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678–79 (Tex. 1979). Rule 166a requires that motions for summary judgment state specific grounds relied upon, that issues not expressly presented to the trial court by written motion, answer, or other response not be considered on appeal as grounds for reversal, and that all the summary-judgment evidence be on file before the hearing or filed thereafter and before judgment with permission of the court. TEX.R.CIV.P. 166a. The rule is designed to permit a review of a summary judgment based on evidence considered by the court and not what an appellate court speculates that the court may have considered. Additionally, unobjected-to hearsay

has probative value. TEX.R.CIV.EVID. 802. When, as here, the record does not reflect that the court ruled on an objection that summary-judgment evidence contains hearsay, the appellate court cannot determine whether the court considered the hearsay in granting the summary judgment. Thus, we hold that evidence that has been objected to remains part of the summary-judgment evidence unless an order sustaining the objection is reduced to writing, signed, and entered of record.[1] *See Utilities Pipeline,* 760 S.W.2d at 723.

Eads' summary-judgment evidence consists of her affidavit, the affidavits of three fellow employees, and excerpts from the depositions of Bostick and Landiss. Eads' affidavit states that the banking relationship between the bank and her brother, Mike Simons, turned sour, that the bank put pressure on Eads and others to assume or move Simons' business to another bank, that she did assume a portion of Simons' debts, that she was told that her relationship with her brother was damaging her relationship with the bank, and that an overdraft that she approved—although not a "normal procedure" and "poor judgment" on her part—was used as a pretext for her dismissal. Ina Jekel, a fellow employee, stated that Lonnie Abrahams, then president of the bank, told her that Bostick told him that Eads should be encouraged to disassociate herself from her brother, that she "understood" that Eads' failure to do so would place her employment in jeopardy, and that she related this information to Eads. Emmett Crawford, another employee, stated that Abrahams told him that Eads should discontinue her relationship with her brother. Abrahams stated that he talked to Bostick about Simons' relationship with the bank, that Bostick did not speak unfavorably of Eads or instruct him to confront her about Simons, and that he told Jekel and Crawford about the conversations and suggested to Jekel that she talk to Eads. Bostick denied having anything to do with Eads' dismissal or knowing about it before it happened; he stated

---

1. A rule allowing objections to be effective in the absence of a ruling would allow the objecting party to "lay behind the log," a practice soundly condemned in *Clear Creek. City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 675–78 (Tex.1979).

that her employment was terminated because of the overdraft incident. Landiss testified that he investigated the overdraft incident and, because Eads approved the overdraft without authority, she was discharged.

Although there are conflicts in the summary-judgment evidence presented by Eads, we do not find evidence that would create a fact issue about Bostick's or Landiss' lack of good faith or that either did not act with a belief that what he did was in the best interest of the corporation. *See Maxey*, 507 S.W.2d at 726. Thus, Bostick and Landiss conclusively established their affirmative defenses to the tortious-interference cause of action—legal justification—by proving all of the elements of the defense as a matter of law, demonstrating that there is no genuine issue of material fact. *See Sterner*, 767 S.W.2d at 690; *Montgomery*, 669 S.W.2d at 310–11.

We overrule the point of error and affirm the judgment.

THOMAS, C.J., not participating.