**Opinion issued August 20, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00556-CV

———————————

## MIKE BIRNBAUM AND BEVERLY BIRNBAUM, Appellants

## V.

## GENA J. ATWELL, PHYLLIS BROWNING, PHYLLIS BROWNING COMPANY, AND MIMI WEBER, Appellees

On Appeal from the 166th District Court
Bexar County, Texas
Trial Court Case No. 2013-CI-15152[1]

## MEMORANDUM OPINION

---

[1] On July 1, 2014, the Texas Supreme Court ordered this appeal transferred from the Court of Appeals for the Fourth District of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013) (authorizing transfer of cases). We are unaware of any conflict between the precedent of the Court of Appeals for the Fourth District and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

Mike and Beverly Birnbaum purchased a penthouse condominium unit in San Antonio in 2007. They had it remodeled and moved in two years later. Soon after they moved in, a rainstorm occurred and they discovered numerous water leaks throughout the unit.

The Birnbaums brought suit against the seller, Gena Atwell, Atwell's realtor, Phyllis Browning, Browning's company, and their own realtor, Mimi Weber, who also worked with Browning's company. They alleged that Atwell had misrepresented the condition of the unit and failed to disclose its persistent water intrusion problems, asserting claims for breach of contract, common-law and statutory fraud, fraud by nondisclosure, fraudulent inducement, negligence, gross negligence, negligent misrepresentation, and violations of the Texas Deceptive Trade Practices Act (DTPA).[2] *See* TEX. BUS. & COM. CODE ANN. §§ 17.41–17.63, 27.01 (West 2009). They sued the realtors for breach of contract, negligence, gross negligence, negligent misrepresentation, and breach of fiduciary duty.

Atwell and the realtors moved for summary judgment on traditional and no-evidence grounds, contending, among other things, that the Birnbaums had no evidence of the elements of reliance or causation, at least one of which was an essential element of each of the Birnbaums' claims. The trial court granted

---

[2] The Birnbaums also sued their remodelers and the condominium association, among others. The claims against those parties were severed from the claims involved in this appeal.

summary judgment in favor of Atwell and the realtors without specifying grounds. The Birnbaums moved for new trial and the trial court denied the motion.

On appeal, the Birnbaums challenge the propriety of the summary judgment. They also contend that the trial court erred in denying their motion for new trial and in awarding Atwell and the realtors appellate attorney's fees without making them contingent on the success of the appeal. We modify the judgment to make appellate attorney's fees contingent on the success of appeal and, as modified, affirm.

## Background

Atwell and her husband bought and moved into the penthouse condominium unit in 1999. In 2007, a year after her husband died, Atwell retained Browning as her realtor, who listed the property for sale at a price of $2.4 million. A friend of the Birnbaums, who lived in the building and knew they were interested in buying a unit there, contacted them to let them know Atwell's unit was for sale. The same day Atwell listed the property, she received an offer from the Birnbaums through Weber.

The Birnbaums walked through the unit with Weber. They made a verbal offer of $2.2 million, which Atwell accepted. Using the condominium unit resale form promulgated by the Texas Real Estate Commission (TREC), Weber prepared

an earnest money contract, which Atwell and Birnbaum signed.  Section 7 of the contract, entitled "**PROPERTY CONDITION**," recites:

> D.    ACCEPTANCE OF PROPERTY CONDITION:  Buyer accepts the Property in its present condition; provided Seller, at Seller's expense, shall complete the following specific repairs and treatments: _____[blank]_____.

At the same time the parties executed the earnest money contract, Atwell completed and gave the Birnbaums a four-page Seller's Disclosure Notice, another TREC form.  The Notice proclaims in bold font at the top of the first page:

> THIS NOTICE IS A DISCLOSURE OF SELLER'S KNOWLEDGE OF THE CONDITION OF THE PROPERTY AS OF THE DATE SIGNED BY SELLER AND IS NOT A SUBSTITUTE FOR ANY INSPECTIONS OR WARRANTIES THE BUYER MAY WISH TO OBTAIN.  IT IS NOT A WARRANTY OF ANY KIND BY SELLER, SELLER'S AGENTS, OR ANY OTHER AGENT.

Section 3 of the four-page form asks: "Are you (Seller) aware of any of the following conditions: Mark Yes (Y) if you are aware and No (N) if you are not aware."  A two-column list itemizing 35 conditions follows.  Atwell checked "Y" for the following conditions:

- Previous Flooding into the Structures;
- Previous Flooding onto the Property; and
- Water Penetration.

The next question asked Atwell to explain her "yes" responses.  Atwell wrote: "Unit had some water damage before we bought it.  All fixed and no water problems since."  The Birnbaums' expert witness, realtor Barbara Tarin, testified at

her deposition that Atwell's disclosures conflicted with each other by saying that "yes, there is water penetration" while at the same time saying that any water leaks were "[a]ll fixed."

After signing the earnest money contract, the Birnbaums hired a property inspector to inspect the condominium unit. Among other things, the inspector's report observed:

- Weathering, wear . . . at interior wood floor at lower floor office at sliding door.
- Cupping observed at wood floor at kitchen near water heater closet, ice maker unit. This is typically associated with high humidity or moisture.
- Water damage, staining at carpet near sliding door at lower bedroom from leakage.
- Water damage observed on ceiling at lower floor office from past roof leakage.
- Water staining observed at ceiling rear area of living room near a/c vent.
- Water staining, cracking observed at ceiling corner at lower bedroom.
- Signs of water leakage from balcony to interior of bedroom, in need of repairs.

The inspector checked the box denoting "not functioning/needs repair" for the observations concerning water damage to the ceilings and floors.

Mike Birnbaum, an experienced commercial real estate broker, also consulted about his prospective purchase with Kenneth Gindy, an attorney

experienced in residential real estate transactions.  In his letter to the Birnbaums, Gindy reported that

> [a]bout 2 or 3 years ago litigation was instituted over problems of water leaks in the building.  There were questions over whether the water was coming from the patios and drains and whether it was the condo association or unit owner's responsibility to make repairs.  The litigation was settled within the last year and I thought the association was going to resolve the unit owner vs. association responsibility issue for such leaks after the suit was settled.  I did not see any clarification of the parties' responsibilities in the materials I received.

Gindy advised the Birnbaums to make further inquiry and "have the Seller clarify who is responsible for the repair of such leaks and who has liability from units below the one [the Birnbaums] are buying for possible leaks that have already occurred."  The Birnbaums did not approach Atwell, but Mike Birnbaum discussed the building's history of water leaks with the manager of the condominium homeowners association, Roy Johnson.  Johnson informed him that the patios had previously leaked and needed repair.

Gindy also advised the Birnbaums to request an extension of the closing date so that they could discuss with Atwell the concerns raised by the inspection report. The Birnbaums made the request and Atwell agreed to the extension.  The Birnbaums determined that it would cost $160,000 to waterproof the unit and replace the air-conditioning units.  As a result, the Birnbaums renegotiated the sales price down to $2,040,000, a $160,000 decrease from the price accepted in the earnest money contract and a $360,000 decrease from Atwell's original asking

price. The Birnbaums conducted all negotiations through the agents. They never questioned Atwell about the water leaks or the conflicting statements in her Seller's Disclosure form, which constitutes the only information the Birnbaums obtained from Atwell. The parties closed on the sale in late August 2007.

Following the closing, the Birnbaums had the waterproofing and other work done on the patios as well as extensive remodeling work on the interior of the unit, an endeavor that lasted two years. No evidence shows that any water leakage occurred during that period. Shortly after the Birnbaums moved into the remodeled unit in September 2009, the area experienced a heavy rainstorm. The Birnbaums allege that water leakage occurred at that time and that numerous other leaks in various locations have occurred since then. An investigation revealed that the roof of the condominium building had been leaking for years, and another penthouse unit owner had experienced similar leaks. The Birnbaums also discovered that water intrusion occurred in their unit as a result of the defective window system, which was used throughout the building, as well as problems with the flashing on the stucco columns and the precast concrete used on the building's exterior.

Alleging that the seller and realtors did not adequately disclose the water penetration problems before the sale, the Birnbaums sued Atwell for breach of contract, common law fraud, fraud in a real estate transaction, fraud by

7

nondisclosure, fraud in the inducement, negligence, gross negligence, negligent misrepresentation, and deceptive trade practices. They sued the realtors for breach of contract, negligence, gross negligence, negligent misrepresentation, and breach of fiduciary duty.

**Discussion**

**I.     Status of the Birnbaums' summary-judgment evidence**

The Birnbaums claim that the seller and realtors waived their objections to the Birnbaums' expert reports and the Birnbaums' affidavits, tendered with their summary-judgment responses, by failing to procure a written order containing the trial court's rulings. A party's failure to secure a ruling on a timely objection waives the issue on appeal. *Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 371 S.W.3d 366, 383 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). The Birnbaums' claim relies on the Dallas Court of Appeals' decision in *Utilities Pipeline Co. v. American Petrofina Marketing*, which holds that, a ruling on an objection to summary judgment evidence is preserved only when reduced to writing, signed by the trial court, and entered of record. 760 S.W.2d 719, 723 (Tex. App.—Dallas 1988, no writ); *accord S & I Mgmt., Inc. v. Choi*, 331 S.W.3d 849, 855 (Tex. App.—Dallas 2011, no pet.) (relying on *Utilities Pipeline*).

*Utilities Pipeline* does not govern our disposition of this issue. That decision predates the 1997 revision of the appellate rules, which eliminated

8

hypertechnical waiver rules in favor of review on the merits. *See Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005) (reiterating that the appellate rules "are designed to resolve appeals on the merits and we must interpret and apply them whenever possible to achieve that aim"); *Bennett v. Cochran*, 96 S.W.3d 227, 229–30 (Tex. 2002) (same); *Verburgt v. Dorner*, 959 S.W.2d 615, 616 (Tex. 1997) (noting "policy embodied in our appellate rules that disfavors disposing of appeals on harmless procedural defects" and holding courts of appeals must construe rules liberally so that the right to appeal is not lost "by imposing requirements not absolutely necessary to effect the purpose of a rule"); *Gallagher v. Fire Ins. Exch.*, 950 S.W.2d 370, 370–71 (Tex. 1997) (reaffirming "commitment to ensuring that courts do not unfairly apply the rules of appellate procedure to avoid addressing a party's meritorious claim").

The preservation-of-error rule provides that,

> [a]s a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely objection that stated the grounds for the ruling sought with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context.

TEX. R. APP. P. 33.1. The record shows that the trial court heard argument and documented its express rulings on the seller and realtors' objections to the Birnbaums' summary-judgment evidence in the reporter's record, thereby satisfying the plain language of the rule. *See In re Bill Heard Chevrolet, Ltd.*, 209

9

S.W.3d 311, 314–15 (Tex. App.—Houston [1st Dist.] 2006, orig. proceeding) (explaining that orders made in open court transcribed by court reporter comply with Rule 33.1's requirements).

Citing our decision in *Essex Crane Rental*, the Birnbaums also contend that the trial court erred in reviewing the summary judgment evidence before considering the seller and realtors' objections. 371 S.W.3d at 383. *Essex Crane Rental* does not support their contention. In that case, we held that the appellee waived its objections to summary–judgment evidence by not raising them until after the trial court granted the summary-judgment motion. *Id.* In this case, the trial court heard the parties' evidentiary objections at a hearing that took place several days before the court informed the parties that summary judgment would be granted and a month before it signed the order on the motion.

The case of *S & I Management, Inc. v. Choi*, 331 S.W.3d 849 (Tex. App.—Dallas 2011, no pet.), also cited by the Birnbaums, is likewise inapposite. There, Choi filed written objections to his opponent's summary-judgment evidence, but did not seek a ruling from the trial court until after it ruled on the summary-judgment motion. *Id.* at 855. Here, the record demonstrates that the seller and realtors timely interposed their objections and the trial court ruled in open court on the objections before hearing argument and ruling on the motion.

As the appellate record demonstrates, the seller and realtors procured timely and express rulings on their objections to the Birnbaums' summary-judgment evidence. The Birnbaums do not challenge any of the evidentiary rulings on their merits other than to complain that the trial court erroneously excluded their affidavits on credibility determinations. According to the record, the realtors objected to the Birnbaums' opinions concerning whether the realtors acted in good faith and with candor and honesty as impermissible lay opinion testimony. *See* TEX. R. EVID. 701. The Birnbaums do not provide any authority or argument to support their complaint that their affidavit testimony was improperly excluded on that basis; as a result, we hold that they waived any complaint about the affidavits' exclusion.[3] *See* TEX. R. APP. P. 33.1.

## II.    Propriety of Summary Judgment

### A.    Standard of review

We review summary judgments de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When a summary judgment does not specify the grounds on which it was granted, we will affirm the judgment if any one of the

---

[3]    In their reply brief, the Birnbaums for the first time raise additional complaints concerning the trial court's rulings on their summary judgment evidence. We decline to address these complaints. *See Marin Real Estate Partners, L.P. v. Vogt*, 373 S.W.3d 57, 72 (Tex. App.—San Antonio 2011, no pet.) (holding issues raised for first time in reply brief may not be considered, except in exceptional cases); *McAlester Fuel Co. v. Smith Int'l, Inc.*, 257 S.W.3d 732, 737 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) ("An issue raised for the first time in a reply brief is ordinarily waived and need not be considered by this Court.").

11

theories advanced in the motion is meritorious. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004).

After adequate time for discovery, a party may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim. TEX. R. CIV. P. 166a(i); *Hahn v. Love*, 321 S.W.3d 517, 523–24 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). Once the movant specifies the elements on which there is no evidence, the burden shifts to the nonmovant to raise a fact issue on the challenged elements. *Id.*

In a traditional summary judgment motion, the movant has the burden to show that no genuine issue of material fact exists and that the trial court should grant judgment as a matter of law. TEX. R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). In reviewing a traditional summary judgment, we must indulge every reasonable inference in favor of the nonmovant, take all evidence favorable to the nonmovant as true, and resolve any doubts in favor of the nonmovant. *Valence*, 164 S.W.3d at 661. A defendant who moves for traditional summary judgment on the plaintiff's claim must conclusively disprove at least one element of the plaintiff's cause of action. *Little v. Tex. Dep't of Crim. Justice*, 148 S.W.3d 374, 381 (Tex. 2004).

## B. Analysis

The seller and realtors moved for summary judgment on both traditional and no-evidence grounds concerning the Birnbaums' failure to show the causation or reliance necessary to each of their claims.[4] We consider these grounds in turn, then consider the propriety of summary judgment on the Birnbaums' negligence claims against only the realtors.

### 1. TREC contract's "in its present condition" clause

The Birnbaums complain that the trial court erred in construing the TREC contract's "in its present condition" clause as an "as is" clause disclaiming reliance. A TREC contract using the language "in its current condition" has been construed to be an "as is" agreement. *Cherry v. McCall*, 138 S.W.3d 35, 39 (Tex. App.—San Antonio 2004, pet. denied);[5] *accord Sims v. Century 21 Capital Team,*

---

[4]     *See* TEX. BUS. & COM. CODE ANN. §§ 27.01 (West 2009) (fraud in real estate transaction), 17.50(a)(1) (DTPA); *see*, *e.g.*, *Italian Cowboy Partners, Ltd v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011) (fraud); *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990) (negligence); *Lundy v. Masson*, 260 S.W.3d 482, 501 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (breach of fiduciary duty); *Winchek v. Am. Express Travel Related Servs. Co.*, 232 S.W.3d 197, 201 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (breach of contract).

[5]     TREC recently revised the condominium resale earnest money contract, amending Paragraph 7D, "Property Condition," to replace "in its present condition" with "As Is" and to define "As Is" as "the present condition of the Property with any and all defects and without warranty except for the warranties in this contract." 24 *TREC Advisor* No. 6, at 4 (June 2014).

13

*Inc.*, No. 03-05-00461-CV, 2006 WL 2589358 (Tex. App.—Austin 2005, no pet.) (declaring that "in its current condition," as used on TREC form, is equivalent to "as is");[6] *Larsen v. Carlene Langford & Assocs., Inc.*, 41 S.W.3d 245, 251 (Tex. App.—Waco 2001, pet. denied) (construing as "as is" clause contract language stating that "[b]uyer accepts the Property in its present condition. Buyer shall pay for any repairs designated by a lender"); *Fletcher v. Edwards*, 26 S.W.3d 66, 75 (Tex. App.—Waco 2000, pet. denied). Our court has not ruled squarely on this issue,[7] but because this case was transferred from the San Antonio Court of Appeals, we consider that court's precedent in our analysis. *See* TEX. R. APP. P. 41.3.

The Birnbaums dismiss as dicta the San Antonio appellate court's interpretation of a TREC earnest money contract's "in its present condition" clause as an "as is" agreement in *Cherry*. They are correct that the *Cherry* parties did not dispute the clause's meaning, but the Birnbaums do not advance any alternative reasonable interpretation for "in its present condition," and we do not find the term ambiguous. *See Sage St. Assocs. v. Northdale Constr. Co.*, 863 S.W.2d 438, 445

---

[6] The Birnbaums also contend that the trial court's denial of the defendants' request for declaratory relief based on the "as is" provision means that summary judgment cannot be proper on that basis. The declaratory-judgment ruling, however, is not before us and does not affect our analysis. *See* TEX. R. APP. P. 47.1.

[7] *See Williams v. Dardenne*, 345 S.W.3d 118, 123 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) (explaining that court would not reach question of whether TREC "in its present condition" provision is properly construed as "as is" clause because appellants did not contend otherwise).

14

(Tex. 1993) (explaining that court may conclude that contract is ambiguous even in absence of pleading by either party); *see also DeWitt Cnty. Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999) (observing that simple disagreement between parties does not render contract term ambiguous). We therefore hold that the TREC condominium resale contract provision reciting that "[b]uyer accepts the Property in its present condition" effectively constitutes a promise to purchase the property "as is."

We next examine the effect of the clause in light of the parties other contractual promises and the surrounding circumstances. "A buyer who purchases property 'as is' chooses 'to rely entirely upon his own determination' of the property's value and condition without any assurances from the seller." *Williams v. Dardenne*, 345 S.W.3d 118, 123 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) (quoting *Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 161 (Tex. 1995)). An "as is" agreement thus may negate the elements of causation and reliance for DTPA, fraud, or negligence claims relating to the value or the condition of the property. *Id.* (citing *Prudential*, 896 S.W.2d at 161, and *Welwood v. Cypress Creek Estates, Inc.*, 205 S.W.3d 722, 726 (Tex. App.—Dallas 2006, no pet.)); *see also Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 335 (Tex. 2011) (holding that merger clause which provided that "neither Landlord nor Landlord's agents, employees or contractors have made

any representations or promises with respect to the Site, the Shopping Center or this Lease except as expressly set forth herein," and that "this lease constitutes the entire agreement between the parties hereto with respect to the subject matter hereof" did not express clear and unequivocal intent to disclaim reliance or preclude claim for fraudulent inducement).  The Birnbaums contend, however, that the clause is invalid and unenforceable in this context, where the buyer gave assurances as to the condition of the property.

When considering the enforceability of an "as is" clause in this context, courts consider the totality of the circumstances, including: (1) the sophistication of the parties and whether they were represented by counsel; (2) whether the contract was an arm's length transaction; (3) the relative bargaining power of the parties and whether the contractual language was freely negotiated; and (4) whether that language was an important part of the parties' bargain as opposed to being a "boilerplate" provision. *Prudential*, 896 S.W.2d at 162.

We have upheld the validity of an "as is" clause where the parties to the agreement were equally sophisticated, particularly when the buyer had the opportunity to inspect the premises before purchase.  *Bynum v. Prudential Residential Servs., L.P.*, 129 S.W.3d 781, 789 (Tex. App.—Houston [1st Dist.] 2004, pet. denied); *see also Rader v. Danny Darby Real Estate, Inc.*, No. 05-97-01927-CV, 2001 WL 1029355, at *4 (Tex. App.—Dallas Sept. 10, 2001, no pet.)

16

(rejecting lack-of-sophistication argument as sole basis for invalidating "as is" clause where buyers who bought home in poor condition negotiated several repairs without aid of real estate agent or lawyer). Here, Mike Birnbaum was trained as an attorney and has had many years of experience in commercial real-estate transactions. The Birnbaums inspected the property without interference and consulted with an attorney with residential real-estate experience to review pertinent documents and to advise them regarding the proposed purchase. They also successfully negotiated a reduction in the purchase price to account for the cost of certain repairs. Under these circumstances, lack of sophistication is not a basis for invalidating the "as is" clause.

The Birnbaums do not dispute that the transaction was at arm's length, but they claim that the clause should be rejected as boilerplate because it was not freely negotiated. We first observe that the seller did not draft her own earnest money contract; it was executed on a TREC-promulgated form. But for a few exceptions, none of which applies here, the Texas Administrative Code requires licensed real estate agents to use the TREC forms that may apply to the proposed real estate transaction. *See* 22 TEX. ADMIN. CODE § 537.11; *see also* TEX. OCC. CODE ANN. § 1101.155(a). Second, although the Birnbaums contend that the provision was neither discussed nor negotiated, the record shows that, after conducting their own investigation and inspection, the Birnbaums returned to

Atwell and asked her to lower the price so that effectively, she would assume the expense of the patio weatherproofing. This negotiation bears directly on the "in its present condition" clause's proviso that "Seller, at Seller's expense," would assume the responsibility for any identified specific repairs or treatments. The "as is" clause is not rendered unenforceable for this reason.

## 2. Fraudulent inducement

The Birnbaums are not bound by the "as is" clause if either Atwell or the realtors (1) induced them to enter into the contract by making a fraudulent representation, either affirmatively or by concealing information, and (2) the Birnbaums actually relied on the representation in entering into the agreement. *See Prudential*, 896 S.W.2d at 162; *see also Italian Cowboy Partners*, 341 S.W.3d at 335–36 (endorsing view that, even when fraudulent misrepresentation claim involves contract, claim centers on question whether party asserting fraud would have entered agreement had it known representation was false). This exception intertwines with the seller and the realtors' second ground for summary judgment—that the Birnbaums' independent inspection and investigation precludes a showing of reliance and therefore, there is no evidence of any causal connection between the seller and realtors' statements about the property's condition and the Birnbaums' alleged damages.

The parties do not dispute that Atwell put the Birnbaums on notice that prior water leaks had occurred in the unit; the Birnbaums complain that Atwell misrepresented the recency and frequency of the leaks. Specifically, the Birnbaums fault Atwell for failing to disclose a number of water leaks that occurred after she and her husband moved into the unit, including:

- Water penetration in the powder room;
- Leaks in the large living room area;
- Leaks in the upstairs foyer;
- Leaks in the master bedroom on the side of the window walls;
- Water penetration in the lower bedroom; and
- Leaks that occurred in 2002 in the TV room, the sitting room ceiling the living room ceiling, the ceiling above the master bathroom chandelier, and the south ceiling of the entry lobby.

Atwell, however, was "charged only with disclosing such material facts as to put a buyer exercising reasonable diligence on notice of the condition" of the residence. *See Flutobo, Inc. v. Holloway*, 419 S.W.3d 622 (Tex. App.—Houston [14th Dist.] 2013, pet. denied); *Lim v. Baker*, No. 04-06-00703-CV, 2007 WL 4180153, at *2 (Tex. App.—San Antonio Nov. 28, 2007, no pet.) (mem. op.) (citing *Cole v. Johnson*, 157 S.W.3d 856, 860–61 (Tex. App.—Fort Worth 2005, no pet.)). Atwell admitted that her written disclosure was misleading to the extent that it could have been taken to mean that all of the leak repairs took place before she and her husband moved into the unit, when some repairs were not made until after they were living in the unit. But the Seller's Disclosure form expressly

19

required Atwell to disclose only her "knowledge of the condition of the property as of the date signed." The form asks whether the seller is "aware of any defects or malfunctions" in different components of the property and of any appliances that are not in working condition. Atwell disclosed the previous flooding and water penetration in response to the question of whether or not she was aware of any of the specifically enumerated prior or existing conditions. Apart from the prior conditions identified on that list (which include previous flooding, previous fires, previous foundation repairs, previous roof repairs, previous termite treatment, and previous repair of damage from termites or other wood-destroying insects), Atwell was not required to disclose prior repairs unless she was aware that the repairs were unfinished or did not correct the problem.[8] *See Sherman* v. *Elkowitz*, 130 S.W.3d 316, 323 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (holding that, where seller's disclosure identified cracks in driveway as known defect needing repair and prior treatment for termites but failed to disclose other defects in property that were subject of prior lawsuit and broker's knowledge of prior lawsuit, broker did not have duty to disclose prior lawsuit where seller told broker that all

---

[8] The Birnbaums' brief insinuates that some of the leaks in the unit had not been repaired, declaring that Atwell "did nothing to stop the water penetration," and that the only remedial measure Atwell undertook was to place buckets or trash cans underneath to collect the water. The Birnbaums' brief makes no mention of Atwell's testimony in which she explained that her husband had all the leaks repaired, and that the unit had no leaks "since long before" her husband died— indicating that no water infiltration had occurred for substantially more than a year before she placed the unit on the market.

defects except driveway had been repaired). Knowledge of past repairs does not establish knowledge of a defective condition. *See Pfeiffer v. Ebby Halliday Real Estate, Inc.*, 747 S.W.2d 887, 890 (Tex. App.—Dallas 1988, no writ) ("[R]epairs correct defects, not prove their continued existence."); *accord Sherman*, 130 S.W.3d at 322. Under the circumstances, Atwell did not have a duty to make any disclosure she did not make.

The evidence also fails to raise a genuine issue of material fact concerning whether the Birnbaums relied on Atwell's disclosures. Texas courts consistently have concluded that a buyer's independent inspection precludes a showing of causation and reliance if it reveals to the buyer the information that the seller allegedly failed to disclose. *Williams*, 345 S.W.3d at 125–26; *see Lesieur v. Fryar*, 325 S.W.3d 242, 246 (Tex. App.—San Antonio 2010, pet. denied) (holding that causation and reliance were conclusively defeated when buyer's independently obtained inspection report contained same information about foundation issues as report that sellers failed to disclose). This is particularly true when the buyer relies on an independent inspection disclosing that information to renegotiate the sales contract that results in the sale. *Fernandez v. Schultz*, 15 S.W.3d 648, 652 (Tex. App.—Dallas 2000, no pet.); *Dubow v. Dragon*, 746 S.W.2d 857, 860 (Tex. App.—Dallas 1988, no writ) (affirming summary judgment in favor of seller when buyer obtained independent inspection of foundation and estimates for foundation

21

repair before purchasing house and negotiated modification of contract in light of same).

The evidence shows that the Birnbaums hired an inspector, retained a real estate attorney, and consulted with the condominium association manager, all of whom notified the Birnbaums of water penetration problems in the unit as well as in other locations in the building. Their attorney reviewed the earnest money contract and informed the Birnbaums about the building's problem with water leaks, which apparently was serious and longstanding enough to lead some of the unit owners to bring suit against the condominium property owners. The Birnbaums' attorney specifically noted that the litigation raised questions concerning the source of the leaks in the building.[9] The Birnbaums claim that they were led to understand that the patio weatherproofing was the only source of the water penetration problems, but neither Atwell nor the realtors made any representation about the origin of the leaks. The information the Birnbaums gleaned from their inspector, their attorney, and the condominium association manager about the history of prior leaks in the unit and building spurred them to

---

[9] The Birnbaums claim that, because conveyance of a condominium unit also conveys an interest in common elements of the condominium as a whole, a unit seller's duty to disclose problems extends beyond the walls of the unit being sold. We do not reach this question because the Birnbaums' attorney and the condominium association manager provided the Birnbaums with information about water infiltration problems throughout the building.

renegotiate their contract with Atwell and, using estimates provided by another independent source for repairing locations in the unit that were vulnerable to water infiltration, the Birnbaums successfully negotiated a substantial reduction in the unit's purchase price.

On this record, we hold that the trial court did not err in granting summary judgment. No evidence shows that either Atwell or the realtors failed to disclose any knowledge of material facts concerning defective or unrepaired conditions in the condominium unit beyond those the Birnbaums independently discovered before they purchased it. *See Williams*, 345 S.W.3d at 126 ("[A] party who has actual knowledge of specific facts cannot have [justifiably] relied on a misrepresentation of the same facts."); *see also Jones v. Zearfoss*, 456 S.W.3d 618, 622 (Tex. App.—San Antonio 2015, no pet.) (holding no evidence of reliance where seller disclosed "water penetration: upstairs toilet leaked and caused water damage downstairs. Damage was covered by insurance and was professionally corrected," because disclosure was sufficient to induce buyers to act on such information by looking into the extent and severity of water damage); *Lim v. Lomeli*, No. 04-06-00389-CV, 2007 WL 2428078, at *4 (Tex. App.—San Antonio Aug. 29, 2007, no pet.) (mem. op.) (holding that buyers could not prove reliance on their real estate agent's alleged misrepresentations and nondisclosures regarding

23

water damage to house when agent and buyer had same information available to them—visible damage and information disclosed in buyer's inspection report).

### C. Negligence and gross negligence claims against realtors

The Birnbaums further contend that Weber and Browning negligently failed to obtain a condominium resale certificate for the unit in compliance with Chapter 82 of the Texas Property Code and that the failure to secure it cost them $20,000 in damages for landscaping assessments. The Birnbaums contend in their brief that the certificate would have provided information about assessments and pending litigation against the condominium. In attacking the Birnbaums' negligence and gross negligence claims in this regard, the realtors' summary-judgment motion asserted, among other things, that the Birnbaums had no evidence of the elements of (1) duty, (2) breach, or (3) that the realtors' failure to provide the resale certificate caused these damages.

Weber expressly acknowledged she was required to ensure the Birnbaums received the resale certificate, and she admits she failed to do so. This admission, however, does not extinguish the Birnbaums' duty to read the contents of the documents they sign. Atwell and the Birnbaums executed their earnest money contract on the TREC form for resale of a residential condominium which put the Birnbaums on express notice that they were entitled to the resale certificate. The first page of the form used in their transaction declares:

24

> The Resale Certificate, from the condominium owners association . . . is called the "Certificate." The Certificate must be in a form promulgated by TREC or required by the parties. The Certificate must have been prepared no more than 3 months before the date it is delivered to Buyer and must contain at a minimum the information required by Section 82.157, Property Code.

The seller must provide the resale certificate with the earnest money contract or, if not,

> Seller shall deliver the Certificate to Buyer within __15__ days after the effective date of the contract. Buyer may cancel the contract before the sixth day after the date the Buyer receives the Certificate by hand-delivering or mailing written notice of cancellation to Seller . . . .

The TREC form also provides a third option—the parties may agree to waive the requirement to furnish the Certificate.

Mike Birnbaum signed the condominium resale certificate and initialed each page. Texas law has long held that a party who signs a contract is presumed to have read it and understood it unless he was prevented from doing so by fraud. *See*, *e.g.*, *In re Int'l Profit Assocs., Inc.*, 286 S.W.3d 921, 923 (Tex. 2009) (holding that party who signs document is presumed to know its contents); *Cantella & Co. v. Goodwin*, 924 S.W.2d 943, 944 (Tex. 1996) (same). Because the Birnbaums are presumed, as a matter of law, to know that they were entitled to receive a copy of the resale certificate, Weber's failure to ensure that the Birnbaums received the certificate, standing alone, does not provide a causal link to the Birnbaums' damages.

In their briefing, the Birnbaums do not raise any other evidence that the realtors' failure to obtain a certificate caused their alleged damages. Mike Birnbaum testified that he and his wife never received the resale certificate and that the certificate would have informed them as to the amount of maintenance reserve that the condominium unit had on hand at the time of the sale. He further testified that the condominium association assessed them $21,000 in landscaping charges when he and his wife moved into the condominium two years later, after completion of their renovations. However, no evidence links that landscaping assessment to the failure to obtain the certificate, nor does it demonstrate that the assessment for landscaping, which he received two years after buying the condominium unit, had accrued before the sale.

Because the Birnbaums did not adduce evidence that the lack of the resale certificate was a cause of their alleged damages, we hold that the trial court properly granted the realtors' no-evidence summary judgment on the Birnbaums' negligence and gross negligence claims.

## III. Breach of fiduciary duty claim against realtors

The Birnbaums also challenge the summary judgment on their breach of fiduciary duty claim against the realtors. A real estate broker owes a fiduciary duty while acting on behalf of a client. 22 TEX. ADMIN. CODE § 531.1. As grounds for the alleged breach, the Birnbaums contend that Browning, as principal for Phyllis

26

Browning Company, was not in a proper intermediary relationship with buyer's agent Weber, giving rise to a conflict of interest, and that Weber and Browning concealed and failed to adequately disclose the history and extent of water penetration in the unit, which allegedly caused the Birnbaums to pay over market price for the unit and incur unanticipated repair costs.

The breach of fiduciary duty claim fails for the same reason that the Birnbaums' fraud and fraudulent inducement claims fail—they fail to raise a fact issue showing that the Birnbaums lacked notice of or access to any of the material information that the real estate agents had. Moreover, the Birnbaums relied on an independent inspection and their attorney's advice in negotiating a lower price to subsidize the cost of repairing leaks in the unit. As a result, no evidence exists of a causal link between the real estate agents' actions and the Birnbaums' alleged damages.

The Birnbaums also contend that Weber breached her fiduciary duty by failing to advise them that the "in its present condition" language in the TREC condominium unit resale form rendered it an "as is" agreement. This contention disregards the limits of a real estate agent's authority. TREC prohibits licensed real estate agents from (1) practicing law; (2) offering, giving, or attempting to give legal advice, directly or indirectly; or (3) giving advice or opinions about the legal effect of any contracts or other such instruments which may affect the title to

real estate. 22 TEX. ADMIN. CODE § 537.11(b)(1)–(3). We also observe that the Birnbaums' attorney gave them his own advice about the contract's legal effect concerning this issue. As a result, no causal link exists between Weber's communications with the Birnbaums relating to the resale form and their alleged damages.

## IV.  Denial of motion for new trial

The Birnbaums next contend that the trial court erred in denying their motion for new trial based on new evidence. We review the denial of a motion for new trial for an abuse of discretion. *In re R.R.*, 209 S.W.3d 112, 114 (Tex. 2006) (orig. proceeding). The Birnbaums' motion included additional evidence of the history and extent of water penetration problems in the condominium building. This evidence does not raise a fact issue on either reliance or causation. As a result, we hold that the trial court did not abuse its discretion in denying the Birnbaums' motion for new trial.

## IV.  Appellate Attorney's Fees

Finally, the Birnbaums challenge the language in the judgment awarding the seller and realtors their appellate attorney's fees without conditioning their recovery on a successful appeal. The seller and realtors agree that the award of appellate attorney's fees should be dependent on which party prevails on appeal. *N.&W. Ins. Co. v. Sentinel Inv. Grp., LLC*, 419 S.W.3d 534, 541 (Tex. App.—

Houston [1st Dist.] 2013, no pet.); *Ansell Healthcare Prods., Inc. v. U. Med.*, 355 S.W.3d 736, 745 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). An unconditional award of appellate attorney's fees, however, does not require reversal; instead, we may modify a trial court's judgment to make the award of appellate attorney's fees contingent upon the receiving party's success on appeal. *N.&W. Ins.*, 419 S.W.3d at 541; *Ansell Healthcare Prods.*, 355 S.W.3d at 745. We therefore modify the trial court's judgment to condition the awards of appellate attorney's fees on a successful appeal.

## Conclusion

We hold that the trial court did not err in granting summary judgment or in denying the Birnbaums' motion for new trial, but that the trial court's judgment erroneously awards appellate attorney's fees without making them contingent on a successful appeal. We therefore modify the judgment to replace the current provisions awarding appellate attorney's fees to condition them on a successful appeal. As modified, we affirm the judgment of the trial court.

Jane Bland
Justice

Panel consists of Justices Jennings, Bland, and Brown.